**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Northern Division)**

SHERRY L. BERRY,
4409 Marble Hall Rd.
Baltimore, Baltimore City, MD 21218

    *on her own behalf and on behalf of
all others similarly situated*,

            *Plaintiff*,

v.

COOK MOTORCARS, LTD.
1136 South Philadelphia Boulevard
Aberdeen, Harford County, MD 21001

<u>Serve on</u>:

Robert W. Cook, President
Cook Motorcars, Ltd.
1136 South Philadelphia Boulevard
Aberdeen, MD 21001

            *Defendant*.

Civil Action No. 1:09-cv-00426

<u>**CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL**</u>

1.      Plaintiff, Sherry L. Berry (the "Named Plaintiff"), on her own behalf and on behalf of the class defined herein, sues Cook Motorcars, Ltd. ("Cook") and states as follows:

**I.      INTRODUCTION**

2.      This is a Complaint against Cook and its various dealerships for violations of statutory, common law and contractual obligations.  Plaintiff is a person who purchased both new and used vehicles from Cook and who was charged deceptive and illegal fees in connection with her purchase of these motor vehicles.

3.      This Complaint highlights two illegal practices by Cook.  First, this Complaint

challenges Cook's practice and policy of systematically, secretly and illegally adding hundreds or thousands of dollars to the price of its new cars and trucks but concealing these bogus charges from its buyers and lessees (hereinafter "Customers").  As part of a scheme by Cook to extract additional profit from its Customers of which they would be unaware, on information and belief, Plaintiff avers that Cook routinely and systematically adds undisclosed charges (as much as or more than $6,000) to the cost of its new vehicles, thereby depriving the Named Plaintiff and members of the Class of material information to which they were entitled by law and which was needed to understand the proposed transaction.  Through its acts to systematically conceal and/or disguise these undisclosed costs and surreptitiously obtain added profit for the dealer (the "Undisclosed Charges"), Cook repeatedly took large sums of money from its customers without their knowledge or consent, in violation of Maryland law.  With respect to the Named Plaintiff and each class member, Cook consistently violated the fundamental premise in Maryland that car dealers may not charge Customers for products or services which dealers do not disclose.

4.       As set forth below, in violation of the law, Cook systematically and deceptively conceals the fact that its Customers are paying for "Undisclosed Charges" by failing to itemize the charges on Cook's motor vehicle sales contracts.  By failing to itemize or even reference such "Undisclosed Charges," Cook unlawfully fails to disclose the basis for its sale price.  Such a failure deceived or tended to deceive Named Plaintiff and the other members of the proposed Classes and misled these customers of Cook's as to the true value of the products and services they were purchasing.  Cook intended to keep and succeeded in keeping its purchasers and lessees in the dark about the basis for and components of the prices they paid for their new vehicles.

5.       Unknown to Cook's Customers, upon information and belief, the "Undisclosed

Charges" added little or no additional value to the vehicle and Cook's Customers received virtually nothing of value in exchange for the large fees paid.  Regardless, as described above, Cook charged Named Plaintiff and each member of the proposed Undisclosed Charges Class an exorbitant price for the "Undisclosed Charges."   In so doing, Cook systematically and deceptively inflated the cost of its new vehicles, unconscionably increasing its own profits at the expense of its Customers, and to their injury.  When Cook concealed from and failed to disclose to customers the negative equity they had in their trade-in vehicles, Cook violated not just Maryland law but the Credit Repair Organizations Act, 15 U.S.C. §1679.

6.        Second, this Complaint also challenges Cook's practice of taking money from its customers by intentionally misinforming them about the amount due to government entities for items such as title, tags and registration ("Governmental Charges").  Cook regularly collects from its Customers – i.e., persons who purchase or lease new or used vehicles – an amount which exceeds the true amount payable to the government for these charges.  Unbeknownst to its Customers, and as part of its scheme to cheat its Customers, Cook then pays the correct, lower amount to the government and pockets the overcharge. Cook charged Named Plaintiff and each member of the proposed Governmental Overcharges Class excessive Governmental Charges, and retained the excess charges. This scheme to cheat consumers is simple, devious, has been extremely successful, and has lined the dealer's pockets with many thousands of dollars, or more, in illegally obtained profits.

## II.    <u>JURISDICTION AND VENUE</u>

7.        This Court has jurisdiction over this case under 28 U.S.C. § 1331, as this case involves a claim brought pursuant to the Credit Repair Organizations Act, 15 U.S.C. § 1679 *et seq*. (hereinafter "CROA") This Court has supplemental jurisdiction over the state law claims

pursuant to 28 U.S.C. § 1367(a).

8.        Venue is proper in this Court under 28 U.S.C. § 1391, as Cook resides in this District and is subject to service of process in Aberdeen, Maryland, a substantial part of the acts and omissions complained of herein occurred in this District, and Cook is subject to personal jurisdiction in this District.

## III.   PARTIES

9.        Plaintiff Sherry L. Berry is a resident of Baltimore, Maryland.  She purchased two vehicles from Cook:  (1) a used 2004 Mazda RX-8 on April 21, 2007, and (2) a new 2007 Mazda M3-S on June 20, 2007.    Plaintiff purchased and used both vehicles primarily for personal, household or family use.

10.      Cook Motorcars, Ltd. is a Maryland corporation with a principal place of business on South Philadelphia Boulevard in Aberdeen, Maryland.   Cook owns and operates car dealerships in the Baltimore metropolitan area, holding franchises to sell new Chryslers, Dodges, Suzukis, Mazdas and Volkswagens.  At all times pertinent herein, Cook was engaged, *inter alia*, in the marketing, sale and leasing of new and used cars and trucks (collectively hereinafter "vehicles") to consumers across Maryland, including Baltimore City, Towson and beyond.

## IV.   FACTS APPLICABLE TO ALL COUNTS

### a. *Cook's Inclusion of "Undisclosed Charges" In Contracts for Sale of New Vehicles*

11.      At all times relevant to this Complaint, cars sold or leased by Cook have affixed on a side window of each new vehicle what is known in the trade as a "Monroney sticker."

12.      The Monroney sticker is required by federal law, 15 U.S.C. §1232.  That law requires auto manufacturers to establish suggested retail prices for new motor vehicles, both for the retail price of the vehicle and for any optional equipment which the manufacturer installs on

the vehicle before it is delivered to the dealer.  The Monroney sticker also must disclose the cost of transporting the vehicle from the factory to the dealer.  The sum of these costs together produces the Manufacturer's Suggested Retail Price ("MSRP") for a vehicle.

13.     In order to comply with the disclosure provisions of Maryland's Transportation Code, §15-311(b), motor vehicle dealers in Maryland must prepare vehicle sales contracts which accurately disclose the MSRP, or base price, of the vehicle and provide a clear and specific description of each extra item and each extra charge not included in the base price.  Maryland dealers therefore must routinely disclose the price information contained on a vehicle's Monroney sticker on the sales contract for that vehicle.  Dealers also must routinely disclose on a vehicle sales contract any dealer-added items or other charges not included within the vehicle's base price.

14.     Cook, however, does not.  At all times relevant to this Complaint, it has been Cook's standard practice to eliminate the legally mandated disclosure of the MSRP or base price of the vehicle from its vehicle sales contracts, even though its form contracts contain a pre-printed space for disclosure of the vehicle's base price.  Instead of accurately disclosing the vehicle's base price and itemizing additional charges – as virtually all other Maryland dealers do in compliance with Maryland law – Cook discloses only a "TOTAL" price which is misleading, incomplete, and conceals from its Customers the "Undisclosed Charges."  On its vehicle sales contracts, in violation of Maryland law, Cook systematically includes within the vehicle's "TOTAL" price – *but unlawfully does not disclose to its Customers* – additional charges, upon information and belief, believed to include one or more of the following: (1) certain dealer "options" and other charges for items referred to in the trade somewhat derisively as part of a "rust-and-dust" package, i.e., items such as undercoating, fabric protection or paint sealant, (2)

the amount of negative equity which the Customer is being charged in the many instances in which a customer trades in a vehicle whose value is less than the pay-off due to its lien holder, and/or (3) dealer profit added surreptitiously on top of the MSRP. The purpose and effect of Cook's failure to disclose and concealment or disguising of these additional "Undisclosed Charges" is to illegally increase the amount paid by its Customers, to deny Customers the information they need to protect their interests, to unfairly deceive its customers, to misrepresent the true terms of the deal, and to enrich itself at its Customers' expense.  This lawsuit seeks to put an end to these practices and to obtain compensation for Customers who have significantly overpaid for their vehicles.

15.     Cook's "Undisclosed Charges" are not separately itemized or disclosed on its Customer's vehicle sales contracts or other purchase documents as required by law, and Cook deceptively includes the costs for the "Undisclosed Charges" as part of its lump sum "TOTAL" price of the vehicle when they must be separately disclosed so the Customer can make an informed decision as to whether to pay the "Undisclosed Charges" and go through with the deal.

16.     Cook charges its new vehicle purchasers and lessees hundreds or thousands of dollars – as much as or more than $6,000 – in "Undisclosed Charges."

17.     Upon information and belief, the dealer-added options included as part of the "Undisclosed Charges" are virtually worthless and add little or no value to the vehicle; moreover, on information and belief, some of the charges added into the "TOTAL" price are for products which are never installed on the vehicle or provided to the Customer.

18.     For example, Plaintiff avers on information and belief that Cook systematically and secretly adds into the purchase price of new vehicles hundreds of dollars in charges for "rust-and-dust" products such as those for undercoating, fabric protection and paint sealant, without

actually applying the undercoating, fabric protection or paint sealant to the new vehicles sold to its Customers.

19.     On information and belief, Plaintiff avers that Cook systematically conceals from Customers who trade in vehicles which are worth less than what they still owe on their vehicles the amount of negative equity in their trade.  Cooks does this by systematically, routinely and falsely stating on its vehicle sales contracts that it is giving its Customers an allowance for their trade in the exact amount due to the lien holder.  In fact, Cook secretly adds the amount of negative equity in a Customer's trade into the "TOTAL" price for the new vehicle being sold, without disclosing this to its Customer.  In other words, Cook falsely states that it is valuing the customer's trade-in vehicle for, often, thousands of dollars more than Cook is valuing the vehicle, and falsely states that it is crediting the customer with the full amount of the inflated trade-in "allowance" when the trade-in is actually *increasing* the price the customer is paying. Instead of showing a negative trade-in value as required under the law and under the express language of the form contracts Cook uses, Cook rolls the negative equity from the Customers' trade into the "cash price" of the new purchase, thus directly misrepresenting the true terms of the deal on the contract.  This activity not only deceives and tends to deceive consumers, but it results in additional, illegal tax charges being imposed on the consumers.

20.     Cook conceals negative equity in order to make it appear that it is giving the consumer a good trade-in allowance, to conceal from the consumer the amount of debt being refinanced in the transaction, and to push through the financing of a transaction that might not be financed if the negative equity was truthfully disclosed, thereby helping Cook to close another deal and take a kickback of the interest rate on the loan it obtains for the consumer.  This deceptive conduct benefits Cook's bottom line but injuries the consumer in a measurable

monetary amount.

21.     In Maryland, at the time of Plaintiff's transaction, car sales were subject to a 5% excise tax on the purchase price of the vehicle (the excise tax is now 6%).

22.     Excise tax is not meant to be calculated on negative equity – re-financing of negative equity remaining from a prior purchase is not taxable in Maryland.

23.     Moreover, as a practical matter, the dealer's form financing contracts, if truthfully completed, do not allow for the calculation of tax on negative equity.  These form contracts are designed to disclose negative equity and to account for negative equity in such a way that it is not taxed.

24.     When Cook surreptitiously adds the amount of negative equity in a Customer's trade to the cash price of the vehicle, Cook unlawfully compels the Customer to pay unnecessary excise tax on the negative equity – this results in unnecessary double taxation to the consumer since the trade-in vehicle was already taxed when the consumer purchased it.  If Cook disclosed the re-financed negative equity as required under the law, and as specifically provided for on its form contracts, the negative equity would not be taxed, and Plaintiff and other consumers would not have been charged many thousands of dollars in extra taxes.  Cook disguises and hides how it truly values the customer's trade as part of its scheme to push through deals that otherwise would not be approved and to profit through its Undisclosed Charges, even though doing so unlawfully compels its customers to pay additional excise tax they would not have to pay if Cook complied with Maryland law.

25.     A consumer would not incur the excessive excise taxes resulting from Cook's mis-treatment of negative equity in a cash transaction, since in a cash transaction any negative equity in a trade would be paid off at the time of the transaction and not re-financed.  Cook only

charged excessive excise taxes resulting from its mis-treatment of negative equity to its customers who purchased their vehicle on credit.

26.      Upon information and belief, finance companies, banks and other lending sources will not finance the cost of Cook's "Undisclosed Charges," such as its "rust and dust" products and its mis-treatment of negative equity, as they would "Hard Add-on Options" (such as dealer-installed air conditioning or a roof rack) if the undisclosed charges were disclosed, because Cook's undisclosed charges are for intangible items or negative equity which do not increase a vehicle's market value.

27.      At all times relevant to this complaint, §15-311 of the Maryland Transportation Article has provided that a contract for the sale or lease of a new vehicle "shall" include:

> (1)      The base price of the vehicle;
>
> * * *
>
> (3)      A clear and specific description of each extra item and each extra charge not included in the base price of the vehicle ordered by the buyer.

Md. Trans. Code Ann. § 15-311(b)(1) and (3).

28.      Cook's charges for each of the "Undisclosed Charges" are charges which are not included in the base price of a new vehicle (which itself is undisclosed as required by law); each of these "Undisclosed Charges" thus must be specifically and clearly disclosed in accordance with §15-311 of the Maryland Transportation article.

29.      In contravention of the law, Cook failed to include either the base price of the vehicle, or the "clear and specific description" in its sales contracts and other purchase documents.  As set forth more fully below, Cook's omission of a "clear and specific description" deceived and intended to deceive its Customers by indicating that the "Undisclosed Charges"

were included in the price of the vehicle set by the manufacturer.

              *b.  Cook's Undisclosed Mark-Up of Governmental Charges for Hidden,
                    Additional Dealer Profit*

30.        At all times relevant to this complaint, Cook required each Customer who purchased or leased a new or used vehicle to pay governmental fees and charges it listed on its vehicle sales contracts and credit contracts.

31.        Fees which may be legitimately charged by Cook to the public include governmental charges for items such as title, tags and registration ("Governmental Charges"). These charges are established by law and fixed.

32.        Cook regularly and systematically marked up or inflated the amount of these charges and illegally collected the inflated amount from Named Plaintiffs and the proposed Classes described below.  It did so in order to obtain hidden, additional dealer profit, with full knowledge these acts and omissions violated Maryland law, including Maryland's Credit Grantor Closed End Credit Provisions, as set forth more fully below.

33.        Cook represented falsely to Named Plaintiff and the proposed Classes on its form contracts that the inflated charges are imposed by the Government.

34.        Cook was well aware of the correct charges for title, tags, registration and related fees, both before and after collecting the inflated charges from the Named Plaintiff and the other members of the proposed Classes.

35.        After completing each of the vehicle sales and leases subject to this action, Cook, as a matter of course, reported and paid the correct (and routinely lower) amount owed for Governmental Charges to the responsible governmental agencies.  In so doing, Cook did not disclose to the responsible governmental agencies or their customers that the Customer had been charged and assessed an amount in excess of that reported as due and owing in respect of the

Governmental Charges.

36.        Cook failed to return to its Customers the difference between that amount collected from its Customers and the amount paid to the responsible governmental agencies; instead, Cook deliberately and knowingly pocketed the amount of the overcharge as hidden, additional dealer profit.

37.        As a result of the unfair, deceptive and unconscionable practices of Cook, Named Plaintiff and the proposed Classes were charged (1) a large amount of money for goods or services which either were not provided or were illusory at best through charges that were uniformly misrepresented on and/or omitted from the dealership's vehicle sales contracts, and (2) more than the actual costs imposed by the State for Governmental Charges.  Plaintiff and the proposed Classes paid significantly more for their vehicles than they would have paid had the costs for the "Undisclosed Charges" not been so-added to their vehicles, and had Cook not inflated or marked-up the amounts due for Governmental Charges in order to trick its customers and obtain hidden, additional dealer profit.

## V.     FACTS APPLICABLE TO NAMED PLAINTIFF

### a.     Cook's Governmental Fee Overcharges

38.        On or about April 21, 2007, Named Plaintiff Sherry L. Berry purchased a 2004 Mazda RX-8, VIN No. JM1FE17N040128554, from Cook.  *See* **EXHIBIT A**, vehicle sales contract for the purchase of the RX-8.

39.        Cook charged, and Ms. Berry paid, $196.00 for Governmental Charges associated with obtaining her title, tags and registration for the 2004 RX-8.

40.        However, with respect to Ms. Berry's purchase of the RX-8, Cook paid the government only $171.00 for Governmental Charges, as reflected on the receipt which the MVA

provided to Cook when it registered the vehicle in her name.  *See* **EXHIBIT B**, MVA receipt for the RX-8 transaction.

41.        After Cook paid the correct amount and received the receipt from the MVA, Cook retained the extra $25.00 paid by Ms. Berry rather than return it to her, fully aware that it had no right to retain these funds, as part of its scheme to obtain hidden profit by marking up Governmental Charges.

42.        Within a few months of purchase, the RX-8 ceased running and Ms. Berry returned it to Cook.  Cook agreed to take back the RX-8 and allow Ms. Berry to purchase another car from a limited selection on Cook's lot.

43.        On or about June 20, 2007, Ms. Berry purchased a new 2007 Mazda M3-S, VIN No. JM1BK32F971745520, from Cook.  *See* **EXHIBIT C**, vehicle sales contract for the purchase of the M3-S.

44.        In connection with the purchase of the M3-S, Cook charged, and Ms. Berry paid, $200.00 for Governmental Charges associated with obtaining her title, tags and registration. This included a $4.00 tire recycling fee which Cook misrepresented was due upon the sale of a new vehicle.

45.        However, with respect to Ms. Berry's M3, Cook paid the government only $53.00 for Governmental Charges, as reflected on the receipt which the MVA provided to Cook when it registered the vehicle in her name.  *See* **EXHIBIT D**, MVA receipt for the M3-S transaction. After Cook paid the correct $53.00 fee and received the receipt from the MVA, Cook retained the extra $143.00 paid by Ms. Berry rather than return it to her, fully aware that it had no right to retain these funds, as part of its scheme to obtain hidden profits by marking up Governmental Charges.

**b.** *Cook's "Undisclosed Charges"*

46.     In connection with the sale of the new 2007 Mazda M3-S, Cook, its agents and employees prepared a vehicle sales contract that failed to identify the MSRP or base price of the vehicle as required by Transp. Code §15-311.   Indeed, the entry next to the words "BASE PRICE" pre-printed on the sales contract is left blank, in accordance with Cook's usual practice and design.   No itemization of Plaintiff's purchase was provided on Cook's vehicle sales contract for her 2007 Mazda M3-S.

47.     Regardless, unknown to Plaintiff, Cook included in the $23,420 "TOTAL" price for her 2007 Mazda M3-S costs for the "Undisclosed Charges."   Attached as **EXHIBIT E** is a copy of the Monroney sticker, which establishes that the Manufacturer's Suggested Retail Price or base price for the vehicle was only $19,085.00.   In violation of Maryland law, Cook failed to disclose this figure on the vehicle sales contract and failed to itemize or disclose on her contract the basis for the $4,335 difference between the MSRP of $19,085.00 and Cook's "TOTAL" sale price of $23,420.00.   On information and belief, Plaintiff avers that she unwittingly paid at least $4,335 for "Undisclosed Charges" comprised of one or more of the following: "rust-and-dust" items such as those for undercoating, fabric protection and paint sealant, for the undisclosed negative equity in her trade-in, and for unwarranted and illegally obtained additional dealer profit.

48.     Cook did not provide Plaintiff with any written description or explanation of "Undisclosed Charges" on the vehicle sales contract or elsewhere.

49.     Moreover, Cook charged Plaintiff 5% of the negative equity in her trade-in vehicle in unnecessary and legally uncollectible excise taxes, even though Cook falsely represented on the form contract that the vehicle had ***no*** negative equity.

50.      The ambiguous and illegal manner in which Cook (a) failed to disclose the vehicle's MSRP or base price, (b) included all of the costs of the "Undisclosed Charges" within the vehicle's "TOTAL" price, (c) failed to disclose that the price of the vehicle had been bumped up from the MSRP or base price by over $4,000 for the "Undisclosed Charges," (d) failed to disclose the basis for the "Undisclosed Charges" and the basis for the difference between the vehicle's MSRP or base price and Cook's "TOTAL" price, and (e) failed to disclose that the "Undisclosed Charges" provided little or no benefit to Plaintiff and the other members of the classes proposed below, deceived, or tended to deceive, the Plaintiff and each member of the proposed classes, and caused injuries to the Plaintiff and the other members of the proposed classes.

## VI.     CLASS ACTION ALLEGATIONS

51.      The Named Plaintiff brings this action on behalf of two proposed Classes and Subclasses of similarly situated persons consisting of the following:

**Undisclosed Charges Class**
All Customers who purchased or leased a new motor vehicle from Cook where Cook's vehicle sales contract did not include the vehicle's Base Price, or did not include an itemized description and price for each "dealer option" or other charge not included in the Base Price.

**Undisclosed Negative Equity Subclass**
All consumer members of the Undisclosed Charges Class where Cook included an Undisclosed Charge for negative equity in the cash price of the customer's purchase and charged the customer tax on the negative equity, where the customer's installment contract with Cook elects to be governed by Subtitle 10 of Title 12 of the Maryland Commercial Law Article.

**Governmental Overcharges Class**
All customers who purchased or leased a motor vehicle from Cook where Cook charged the customer on the contract more in Governmental Fees than it remitted to the government.

**Governmental Overcharges Subclass**
All consumer members of the Governmental Overcharges Class, where the customer's installment contract with Cook elects to be governed by Subtitle 10 of Title 12 of the Maryland Commercial Law Article.

Excluded from the Classes and Subclasses are (a) those individuals who now are or have ever been executives of the Cook and the spouses, parents, siblings and children of all such individuals, (b) any individual against whom a judgment has been granted in favor of Cook on the account at issue on or before (date of Complaint filing), (c) any individual who was granted a discharge pursuant to the United States Bankruptcy Code or state receivership laws after the date of his or her Installment Contract.

52.     The Classes and Subclasses, as defined above, are identifiable.   The Named Plaintiff is a member of each Class and Subclass.

53.     Each Class and Subclass consists, at a minimum, of hundreds or thousands of individuals, and are thus so numerous that joinder of all members is clearly impracticable.

54.     There are questions of law and fact which are not only common to the Classes and Subclasses, but which predominate over any questions affecting only individual class members. The common and predominating questions include, but are not limited to:

(a)     whether Cook's practice of concealing negative equity from its customers and their creditors violates the CROA, 15 U.S.C. §1679a, *et seq*., and whether Plaintiff is entitled to equitable relief prohibiting Cook from continuing to violate CROA;

(b) whether Cook's practice of charging the customer for its "Undisclosed Charges" violates the Maryland Consumer Protection Act ("CPA"), Md. Com. Law Code Ann. §§ 13-101, *et seq*.;

(c)     whether Cook's practice to eliminate and not disclose the base price or MSRP of each new vehicle sold violates its duties under Md. Trans. Code

Ann. §15-311;

(d)     whether Cook's practice of including charges for dealer-installed options, negative equity or marked-up Governmental Charges as part of the "Undisclosed Charges" which make up Cook's "TOTAL" price for a vehicle violates its duties under Md. Trans. Code Ann. §15-311 to provide a clear explanation of each extra charge and each extra item not included within the base price of a new vehicle;

(e)     whether Cook's practices in presenting, omitting, selling and concealing the "Undisclosed Charges" are unconscionable;

(f)     whether Cook's charge for all or any of the "Undisclosed Charges" was a bogus charge;

(g)     whether Cook included costs for the "Undisclosed Charges" knowing that no additional products or services were provided or were provided yet conferred little or no benefit to the Customer;

(h)     whether Cook should be forced to disgorge the monies received as a result of its scheme to cheat the named Plaintiff and the Class;

(i)     whether Cook ought to be enjoined from the illegal practices alleged in this Complaint;

(j)     whether Cook owed a duty to the Class;

(k)     whether Cook's practice and policy of charging consumers for the "Undisclosed Charges" violates its "obligation of good faith."  Md. Com. Law Code Ann. §1-203;

(l)     whether Cook knew or should have known that its representations

in respect of the "Undisclosed Charges" were false and deceptive;

(m)    whether Cook knew or should have known that its charge for the "Undisclosed Charges" was prohibited by law and thus that its claim of entitlement to these proceeds was false;

(n)    whether Cook systematically overstated the amount due the government for the cost of items such as title, tags and registration;

(o)    whether Cook knew the actual amount of the charges due the government for items such as title, tags and registration but intentionally and deliberately overstated the amount of these charges;

(p)    whether it is lawful for Cook to collect from its Customers more for Governmental Charges than the government assessed and to retain the difference;

(q)    whether Md. Trans. Code §15-311 requires that Cook include on its  vehicle sale contracts a clear statement of the basis for the difference between the actual charge by the government for items such as title, tags and registration and the Governmental Charges assessed by Cooks;

(r)    whether the failure by Cook to identify on the vehicle sales contract the additional dealer profit it makes by marking up or inflating the true cost of Governmental Charges violates the requirements of Md. Trans. Code Ann. § 15-311;

(s)    whether the failure by Cook to comply with Md. Trans. Code Ann. Sections 15-311 and 15.311.1 constitutes a deceptive trade practice in violation of the Maryland Consumer Protection Act;

(t)      whether Cook' practice of preparing vehicle sale contracts, lease agreements and credit contracts which overstate the amounts due the government as Governmental Charges violates the Maryland Consumer Protection Act ("CPA"), Md. Comm. Law Code §§ 13-101, et seq.;

(u)      whether Cook' practice and policy of marking up or inflating the amount of Governmental Charges without disclosure violates its "obligation of good faith" at common law and/or pursuant to Md. Comm. Law Code Ann. §1-203;

(v)      whether Cook engaged in these practices knowingly;

(w)      whether Cook knew or should have known that its practice of marking up or inflating the amount of actual Governmental Charges was false and deceptive;

(x)      whether Cook knew that marking up or inflating the true cost of Governmental Charges was prohibited by law and that its claim of entitlement to these proceeds was thus false;

(y)      whether Cook retained the amount of the overcharge for Governmental Charges knowing that it had no right to retain the overcharge; and

(z)      whether Cook's charging and collection of governmental fee overcharges and excise taxes on undisclosed negative equity from consumers violates the Maryland Credit Grantor Closed End Credit Provisions.

55.      The claims of the Named Plaintiff are typical of the claims of each member of the respective Classes and Subclasses, within the meaning of F.R.C.P. 23(a)(3), and are based on and arise out of common facts constituting the wrongful conduct of Cook. The prosecution of

separate actions by individual members of the Classes and Subclasses would create a risk of establishing incompatible standards of conduct for Cook, within the meaning of F.R.C.P. 23(b)(1)(A).

56.      Cook's actions are generally applicable to each Class and Subclass as a whole, and Plaintiff seeks equitable remedies with respect to each Class and Subclass as a whole, within the meaning of F.R.C.P. 23(b)(2).

57.      Common questions of law and fact enumerated above predominate over questions affecting only individual members of each Class and Subclass, and a class action is the superior method for fair and efficient adjudication of the controversy, within the meaning of F.R.C.P. 231(b)(3). The likelihood that individual members of the Classes will prosecute separate actions is remote due to the time and expense necessary to conduct such litigation. To Plaintiff's knowledge, no similar litigation is currently pending by other members of the Classes. Plaintiff's counsel are experienced in class actions and foresee little difficulty in the management of this case as a class action.

**COUNT ONE – VIOLATION OF 15 U.S.C. §1679,** ***et seq.,***
**THE CREDIT REPAIR ORGANIZATIONS ACT**
*(Undisclosed Negative Equity Subclass)*

58.      Plaintiff re-alleges and incorporates by reference the foregoing allegations, and further alleges:

59.      The CROA, 15 U.S.C. §1679 *et seq.*, was enacted, *inter alia*, to protect the public (including financial institutions) from unfair or deceptive business practices by credit repair organizations. It provides, *inter alia*, that "(n)o person" may make any statement which is untrue or misleading with respect to any consumer's credit worthiness, credit standing or credit capacity to any person who has extended credit to the consumer or to whom the consumer has applied or

is applying for an extension of credit [15 U.S.C. §1679b(a)(1)], and that "(n)o person" may make any statement whose intended effect is to alter the consumer's identification to prevent the display of the consumer's credit record, history, or rating for the purpose of concealing adverse information that is accurate and not obsolete to any person who has extended credit to the consumer or to whom the consumer has applied or is applying for an extension of credit [15 U.S.C. §1679b(a)(2)].  In violation of these provisions, Cook systematically prepared documents which made false and misleading statements to the entities from whom financing was obtained or sought for the purchase of motor vehicles sold by Cook.  Cook made these false and misleading statements because it believed that accurate disclosure of negative equity in Customer trade-ins would lead its Customer and the potential lender to decline to go through with the deal.

60.     Named Plaintiff and the members of the proposed Undisclosed Negative Equity Subclass are consumers as defined under 15 U.S.C. §1679a(1); Cook is a "person" within the meaning of 15 U.S.C. §§1679b(a)(1) and (2) and 1679g.

61.     The transactions of Named Plaintiff and the members of the proposed Undisclosed Negative Equity Subclass with Cook which are the subject of this action were consumer credit transactions as defined under 15 U.S.C. §1679a(2).

62.     In violation of 15 U.S.C. §1679b(a)(1) and (2), Cook concealed the negative equity Named Plaintiff and the other members of the Undisclosed Negative Equity Subclass had in their trade-ins; Cook intentionally misstated the value of the trade-in vehicles offered by Named Plaintiff and members of the proposed Undisclosed Negative Equity Subclass, intending Customers and lenders to believe the trade-in was worth more than its true value; Cook intentionally misstated the value of the vehicle offered for sale to the Named Plaintiff and the other members of the proposed Undisclosed Negative Equity Subclass, and the amount to be

financed by the lender, by increasing its price arbitrarily by the amount of negative equity the Customer had in his or her trade-in; Cook falsely, deceptively and systematically represented on its form contracts with Named Plaintiff and the other members of the Undisclosed Negative Equity Subclass that the dealership was providing Customers with a trade-in value exactly equal to the remaining loan on these vehicles. In fact, as set forth above, Cook valued Customer trade-ins at an amount lower than the remaining loan and increased the cash price of the vehicle being sold by a like amount, in order to deceive both its Customer and any person or entity to whom the Customer's credit contract was assigned or might be assigned. Cook failed to disclose the actual negative equity encumbering the trade-in vehicles of Named Plaintiff and the other members of the proposed Undisclosed Negative Equity Subclass.

63.        It was Cook's systematic, unvarying practice to offer its Customers' credit contracts to banks, finance companies and other lending institutions on documents which concealed this adverse information and which misstated and misrepresented the amount of equity the Customer had in their trade.

64.        When Cook made the omissions and false representations regarding the credit it was giving Named Plaintiff and the other members of the proposed Undisclosed Negative Equity Subclass for their trade-in vehicles, and when it re-financed negative equity in those trade-in vehicles without disclosing that fact on Customer credit contracts and when representing that no negative equity was being re-financed in the transaction, Cook made untrue and/or misleading statements with respect to the credit worthiness, credit standing, and/or credit capacity of Named Plaintiff and the other members of the proposed Undisclosed Negative Equity Subclass to (i) the Named Plaintiff and other members of the proposed Undisclosed Negative Equity Subclass, and (ii) the banks, finance companies or other lending institutions to whom the consumers had

applied for (or were applying for) credit, in violation of 15 U.S.C. §1679b(a)(1) and (2).

65.     As a result of Cook's violations of 15 U.S.C. §1679b(a)(1) and (2) as set forth above, Named Plaintiff and the members of the proposed Undisclosed Negative Equity Subclass were damaged in the amount of negative equity that was surreptitiously re-financed in their transaction, were damaged in the amount of interest charged on the negative equity re-financed in their transactions, and were damaged in the amount of additional and unnecessary taxes that were charged on the negative equity surreptitiously re-financed in their transactions.

66.     Cook engaged in the acts and omissions above through systematic conduct characterized by evil or wrongful motive, intent to injure, knowing and deliberate wrongdoing, ill will, and/or fraud.  Cook intentionally and systematically misrepresented facts regarding trade-in vehicles and negative equity on those vehicles to its customers and potential lenders in order to close more deals and make more money, without regard to the effect those misrepresentations would have on their customers  or on the underwriting standards and financial well-being of the lenders to whom Cook assigned its Customers' credit contracts.

## COUNT TWO –BREACH OF CONTRACT
### *(All Classes and Subclasses)*

67.     Plaintiff re-alleges and incorporates by reference the foregoing allegations, and further alleges:

68.     Named Plaintiff and the members of the proposed Undisclosed Charges Class entered into contracts for the purchase or lease of new vehicles from Cook where the vehicle sales contract did not include the vehicle's Base Price, or did not include an itemized description and price for each "dealer option" or other charge not included in the Base Price.

69.     Named Plaintiff and the members of the proposed Governmental Overcharge Class entered into contracts for the purchase or lease of vehicles from Cook in which Cook

collected Governmental Charges for items such as tags, title and/or registration.

70.     Implied in the contracts between Named Plaintiff and the members of both the proposed Undisclosed Charges Class and proposed Governmental Overcharge Class on the one hand, and Cook on the other, is a covenant of fair dealing.  In addition, at common law and under Md. Com. Law Code Ann., §§1-203 and 2-103, Cook owes Plaintiff and the members of the proposed Classes a duty of good faith in the performance and enforcement of each contract, including the duty of acting honestly in fact and of observing reasonable commercial standards of fair dealing in the auto trade.

71.     The requirements of Md. Trans Code Ann. §15-311, as part of the subsisting laws, entered into and formed a part of the contracts between Named Plaintiff and the members of the proposed Classes on the one hand, and Cook on the other, as if expressly referred to or incorporated in their terms.

72.     Cook breached the contracts with the Named Plaintiff and members of the proposed Undisclosed Charges Class by, among other things: failing to state the base price of the vehicle; failing to provide a clear and specific description of the "Undisclosed Charges" that Cook included in the Total price of the vehicle; failing to provide a clear and specific description of the charge it assessed in the amount of the difference between the amount Cook assessed Named Plaintiff and members of the proposed Overcharge Class for Governmental Charges and the amount Cook paid to government authorities.

73.     In addition, the terms of the Credit Grantor Closed End Credit Provisions, Md. Comm. L. §12-1001, et seq. (hereinafter "CLEC"), and the CROA were specifically referenced and incorporated into the contracts of the Named Plaintiff and the other members of the proposed Undisclosed Negative Equity Subclass and the proposed Undisclosed Governmental Charges

Subclass and incorporated as terms of their contracts.

74.     As described in Count Five, below, which is incorporated here, CLEC prohibits a credit grantor such as Cook from collecting more for Governmental Charges than Cook paid to the Government for such items; CLEC also prohibits a credit grantor such as Cook from collecting excise tax from Named Plaintiff and the other members of the proposed Subclasses on the amount of negative equity that Cook surreptitiously hid in the cash price of their vehicle purchases.

75.     As described in Count One, above, the CROA prohibits a person such as Cook from making untrue and/or misleading statements with respect to the credit-worthiness, credit standing and credit capacity of consumers with respect to the negative equity financed in a transaction.

76.     Accordingly, Cook breached the contracts with the Named Plaintiff and members of the proposed Governmental Overcharge Subclass by collecting more for Governmental Charges for tags, title and/or registration than Cook paid to the Government for such items, and by failing to state the actual amount to be remitted to the government.  Cook also breached the contracts with the Named Plaintiff and the other members of the proposed Undisclosed Negative Equity Subclass by misrepresenting their credit worthiness, credit standing or credit capacity and by charging and collecting excise tax on the amount of concealed negative equity in their trade-in vehicles.

77.     As a result of Cook's breach of the contracts with Named Plaintiff and members of the proposed Undisclosed Charges Class, the proposed Undisclosed Negative Equity Subclass, the proposed Governmental Overcharges Class and the proposed Governmental Overcharges Subclass, Named Plaintiff and the members of the proposed Classes and Subclasses suffered

injuries in the amount of the overcharges and excise taxes on the undisclosed negative equity in their trade-in vehicles.

**COUNT THREE -VIOLATIONS OF MARYLAND'S**
**CONSUMER PROTECTION ACT**
*(All Classes and Subclasses)*

78.        Plaintiff re-alleges and incorporates by reference the foregoing allegations, and further alleges:

79.        Each vehicle purchase and lease transaction set forth herein is governed by the Consumer Protection Act, Md. Comm. Law Code Ann. §§ 13-101 <u>et seq.</u> (2002 Replacement Volume).

80.        Cook is a "merchant" who "directly or indirectly either offers or makes available to consumers any consumer goods or consumer services" and is thus governed by the Consumer Protection Act, Md. Code Ann., Com. Law § 13-101 (g).

81.        Section 13-303 of the Commercial Law Article prohibits unfair or deceptive trade practices in the sale or lease, and offer for sale or lease, of consumer goods and services, and in the extension of consumer credit.  Md. Com. Law §§13-303(1) - (3).

82.        The facts showing Cook's failure to comply with §15-311 of the Transportation article, as set forth above, also constitute an unfair and deceptive trade practice under the Consumer Protection Act.

83.        Cook's failure to comply with the CROA, as set forth above, also constitutes an unfair and deceptive trade practice under the Consumer Protection Act.

84.        Cook committed unfair and deceptive trade practices in violation of the Consumer Protection Act by, *inter alia*: failing to disclose the vehicle's base price on the vehicle sales contract; omitting the "Undisclosed Charges" from the vehicle sales contracts of Plaintiff and the

members of the proposed Undisclosed Charges Class; failing to provide a clear and specific description of each extra item and each extra charge not included in the MSRP or base price; failing to state material facts about its goods, services and pricing; charging Plaintiff and the members of the proposed Undisclosed Charges Class for the "Undisclosed Charges" without properly disclosing these charges or the basis for these charges; omitting material facts about the basis of the "TOTAL" price of its vehicles; misleading Plaintiff and the members of the proposed Undisclosed Charges Class about the value and benefits of its new vehicles; failing to disclose to Plaintiff and the members of the proposed Undisclosed Charges Class the negative equity they had in their trades which it added to their vehicle's purchase price and the amount by which this increased the excise tax they had to pay; misleading Plaintiff and the members of the proposed Undisclosed Charges Class about who provided the goods and services included for the "TOTAL" price; including in its sales contracts the misleading and ambiguous term "TOTAL" price or variation thereof; by representing falsely that the charge for the "TOTAL" price was a component of the manufacturer's base price for new vehicles; and charging for "rust-and-dust" or other products or services which were not provided, all as set forth above.

85.     Cook also committed unfair and deceptive trade practices in violation of the Consumer Protection Act by, *inter alia*: the unconscionable manner in which it presented and concealed the "Undisclosed Charges" to Named Plaintiff  and the members of the proposed Undisclosed Charges Class; charging Named Plaintiff and the members of the proposed Undisclosed Charges Class for items such as undercoating, fabric protection and paint sealant without providing these items; surreptitiously and without disclosure adding the negative equity in Customer trades to the vehicle's purchase price and by seeking and obtaining an unconscionable price for any such goods or services.

86.        Cook's systematic practice of charging and collecting from Named Plaintiff and the members of the proposed Governmental Overcharges Class official fees (Governmental Charges) which exceeded the actual and verifiable expenses of these dealerships for these charges and retaining the amount of the overcharges constitutes an unfair and deceptive trade practice in violation of the Consumer Protection Act.

87.        Cook's systematic practice of charging Named Plaintiff and members of the proposed Governmental Overcharges Class for official fees which were more than the actual and verifiable expenses it incurred violated the CLEC, as set forth in Count Five of this Complaint, below, which is incorporated here.  Cook's practices in violation of the CLEC constitute unfair and deceptive trade practices in violation of the Consumer Protection Act.

88.        By engaging in the acts and omissions set forth above, by making the misrepresentations set forth above, and by failing to disclose material facts where the failure to do so deceived or tended to deceive, Cook committed unlawful trade practices, in violation of the Maryland Consumer Protection Act, §§13-303(1) - (3) and §§13-301(1), (2)(i) and (iv), and (3).

89.        Cook's conduct as set forth above had the capacity, tendency or effect of deceiving Named  Plaintiff and the other members of the proposed Undisclosed Charges and Governmental Overcharges  Classes, who in fact were deceived or misled, causing them injury and loss.

90.        As a result of Cook's unfair and deceptive trade practices in violation of the Consumer Protection Act, Plaintiff and the members of the proposed Classes agreed to purchase and/or lease a new vehicle from Cook at a price surreptitiously inflated by the "Undisclosed Charges," to pay Cook more for the vehicle than they would have paid had Cook not included such charges on its contracts, and to pay more for their vehicles than they would have paid for

comparable vehicles purchased elsewhere which did not contain similar bogus charges. Named Plaintiff and the members of the proposed classes incurred and paid inflated charges for excise tax, many incurred finance charges on same, and Plaintiff incurred other losses and injuries.

91.　　As a result of Cook's unfair and deceptive trade practices in violation of the Consumer Protection Act, Plaintiff and the other members of the proposed Classes were charged official fees (Governmental Charges) which exceeded the actual and verifiable expenses of these dealerships for these charges, and thus incurred losses and injuries in the inflated amounts as a result.

**COUNT FOUR – MONEY HAD AND RECIEVED**
*(All Classes and Subclasses)*

92.　　Plaintiff re-alleges and incorporates by reference the foregoing allegations, and further alleges:

93.　　As set forth above, Cook assessed and collected certain undisclosed charges which were virtually worthless and added little or no value to the vehicle; moreover, on information and belief, some of the charges added into the "TOTAL" price are for products which were never installed on the vehicle or provided to the Customer.

94.　　Additionally, Cook charged and collected official fees (Governmental Charges) which exceeded the actual and verifiable expenses of these dealerships for these charges. Cook retained the portions of the fees and charges which were not actually paid for any governmental purpose.

95.　　By doing so, Cook has come into the possession of money in the form of undisclosed charges that it had, and has no right to at law or in equity.

96.　　It would be inequitable for Cook to retain any such monies that it had no legal right to charge.

97.      As a consequence, Named Plaintiff and the members of each of the Classes have been injured.


## COUNT FIVE – VIOLATIONS OF THE
## MARYLAND CREDIT GRANTOR CLOSED END CREDIT PROVISIONS
*(Undisclosed Negative Equity Subclass and Governmental Overcharges Subclass)*

98.      Plaintiff re-alleges and incorporates by reference the foregoing allegations, and further alleges:

99.      Named Plaintiff entered into a Retail Installment Contract with Cook for each of her vehicle purchases.  Copies of these contracts are attached as Exhibits A and C.  Each contract elects to be governed by Subtitle 10 of Title 12 of the Commercial Law Article, or CLEC.

100.      Cook entered into similar Retail Installment Contracts electing CLEC with each of the other members of the proposed Subclasses.  Through these contracts, Named Plaintiff and the other members of the proposed Subclasses financed all or a portion of the purchase price of their vehicles.  Cook typically sold or assigned these credit contracts to banks or other financing sources but with respect to each such contract, Cook is identified on the credit contract as the "Creditor – Seller" and is a "credit grantor" as defined by CLEC in connection with each contract.

101.      The credit contracts of Named Plaintiff and the members of the proposed Subclasses provide that credit is being extended under Chapter 10 of Title 12 of the Commercial Law article, better known as Maryland's Credit Grantor Closed End Credit Provisions, CL §12-1001 *et seq.*  This statute customarily is abbreviated as "CLEC."

### a.   Unlawful Excise Tax Assessed to Undisclosed Negative Equity Subclass

102.      CLEC specifically limits the charges which credit grantors may charge and collect

from consumer borrowers for "[o]fficial fees and taxes" to "reimbursement of expenses incurred in good faith by the credit grantor." Comm. Law §§12-1005(b)(2) and (d)(1) through (3)[emphasis added].

103.    When Cook included negative equity in the cash price in the transactions of Named Plaintiff and the other members of the proposed Undisclosed Negative Equity Subclass as described above, and, as a result, raised the taxable price of the vehicle, the taxes incurred as a result of the placement of negative equity in the cash price were not incurred in good faith, but instead incurred as a result of deception, fraud and illegal conduct.

104.    Cook intentionally and affirmatively misrepresented and inflated the trade in allowances it was giving Named Plaintiff and the other members of the proposed Undisclosed Negative Equity Subclass on their contracts, and intentionally and affirmatively misrepresented and inflated the cash price of the vehicles purchased by Named Plaintiffs and other members of the proposed Undisclosed Negative Equity Subclass by a like amount.  The taxes which were incurred as the direct and proximate result of these misrepresentations, and which would not have been incurred without the misrepresentations, could not have been, and were not, incurred "in good faith."  These taxes were illegally charged to Named Plaintiff and the other members of the proposed Undisclosed Negative Equity Subclass, in violation of Comm. Law §12-1005.

105.    In addition, Cook's concealment of negative equity charges in the transactions of Named Plaintiff and the other members of the proposed Undisclosed Negative Equity Subclass was in violation of Cook's duties imposed by the Maryland Transportation Code, Section 15-311, as described above. Nothing in Cook's contracts with Named Plaintiff or the other members of the proposed Undisclosed Negative Equity Subclass contains a clear statement of, or a clear and specific description of, the amount charged for the re-financing of negative equity in the

transaction, as required under that section. The taxes which were incurred as the result of Cook's violations of the Transportation Code could not have been incurred in good faith. These taxes were illegally charged to Named Plaintiff and the other members of the proposed Undisclosed Negative Equity Subclass, in violation of Comm. Law §12-1005.

### b. *Overcharge of Government Fees to Governmental Overcharges Subclass*

106.     When Cook included overcharges on government fees in the transactions of Named Plaintiff and the other members of the proposed Governmental Charges Subclass as described above, the overcharges on those fees were not "reimbursement of the expenses incurred in good faith by the credit grantor," and were thus in violation of CLEC.  These fees, also, were incurred as a result of deception,  fraud and illegal conduct.

107.     CL §12-1005 regulates and limits the kind of charges and the amount of charges which Cook can charge and collect from its customers in connection with extensions of credit governed by this statute.

108.     CL §12-1005(d) provides that a credit grantor may charge and collect a fee permitted under Md. Comm. Law §12-1005(b), *inter alia*, only if the fee is an actual and verifiable expense of the credit grantor which it does not retain; in addition, credit grantors may only charge for an expense, tax or charge paid to a governmental agency.  CL §12-1005(d)(2) and §12-1005(d)(3)(ii).

109.     In violation of CL §12-1005(d)(2) and §12-1005(d)(3)(ii), Cook (i) charged and collected from named Plaintiff and the proposed Governmental Overcharges Subclass official fees (Governmental Charges) which exceeded the actual and verifiable expenses of the dealership for these charges and retained the amount of the overcharge, and (ii) charged Named Plaintiff and the proposed Governmental Overcharges Subclass amounts which exceeded the

expense, tax or charge paid to a government agency.

110.     Cook knowingly violated the aforesaid provisions of Maryland's Credit Grantor Closed End Credit Provisions in respect of both proposed Subclasses.

111.     CLEC imposes a civil penalty on credit grantors like Cook who violate the statute, i.e., they may collect only the principal amount of the loan and may not collect any interest, costs, fees or other charges with respect to the loan, per CL §12-1018(a)(2).  In addition, CLEC provides that for knowing violations of the statute, as here, the credit grantor shall forfeit to the borrower 3 times the amount of interest, fees and charges collected in excess of that authorized by the statute, per CL §12-1018(b).

WHEREFORE, Plaintiff prays that:

A.     The Court award Named Plaintiff and the proposed Undisclosed Charges Class injuries in an amount equal to the "Undisclosed Charges," plus the amount of excise tax paid by Named Plaintiff and the proposed Undisclosed Charges Class attributable to the undisclosed negative equity in their trades pursuant to and as a consequence of Cook's breach of contract and violations of the Consumer Protection Act, together with costs, prejudgment interest, finance charges, increased costs of excise taxes paid, and any other equitable or other relief as determined by this Court.

B.     The Court award Plaintiff and the proposed Undisclosed Charges Class restitution in the amount equal to the cost of the "Undisclosed Charges," award the amount of excise tax attributable to the undisclosed negative equity in their trades paid by Named Plaintiff and the proposed Undisclosed Negative Equity Subclass, together with costs and disbursements, prejudgment interest, finance charges, increased costs of excise taxes paid, and any other equitable or other relief as determined by this Court.

C.      The Court award Plaintiff and the proposed Governmental Overcharges Class injuries in an amount equal to the "Governmental Overcharges," pursuant to and as a consequence of Cook's breach of contract and violations of the Consumer Protection Act, together with costs, prejudgment interest, finance charges, increased costs of excise taxes paid, and any other equitable or other relief as determined by this Court.

D.      The Court award Plaintiff and the proposed Governmental Overcharges Class restitution in the amount equal to the cost of the "Governmental Overcharges," together with costs and disbursements, prejudgment interest, finance charges, increased costs of excise taxes paid, and any other equitable or other relief as determined by this Court.

E.      The Court award Plaintiff and the proposed Governmental Overcharges Subclass actual injuries and the civil penalty specified by Md. Comm. L. §12-1018(a)(2).

F.      The Court award Plaintiff and the proposed Subclasses 3 times the amount of interest, fees and charges collected in excess of that allowed by the Credit Grantor Closed End Credit Provisions as the civil penalty specified by Md. Comm. L. §12-1018(b).

G.       The Court award Plaintiff and the proposed Undisclosed Negative Equity Subclass actual injuries and the civil penalty specified by Md. Comm. L. §12-1018(a)(2).

H.      The Court award Plaintiff and the Undisclosed Negative Equity Subclass actual and punitive damages and attorney's fees and costs under 15 U.S.C. §1679g.

I.      The Court declare that Cook's practices in presenting and failing to disclose the "Undisclosed Charges" and inflating the true cost of the governmental charges are unconscionable and violate the Maryland Consumer Protection Act, (ii) that Cook's practices in adding the negative equity in a Customer's trade to the cash price of the vehicle, without disclosure, violates the Maryland Consumer Protection Act, (iii) that §15-311 of the

Transportation article requires that Cook and any motor vehicle dealer provide a clear and

specific description of each extra item or extra charge not included in a new vehicle's base price;

and (iv) any dealer who charges customers an additional fee for goods or services that are

virtually worthless and add little or no value to the vehicle violates the Maryland Consumer

Protection Act, and (v) any dealer who charges and collects official fees (Governmental Charges)

which exceed the expense, tax or charge actually paid to a government agency violates the

Consumer Protection Act.

J.      The Court declare that Cook's practices in misrepresenting negative equity as set

forth herein is in violation of the Credit Repair Organizations Act, 15 U.S.C. §1679 *et seq.*

K.      The Court enjoin Cook from continuing its illegal practices.

L.      The Court award Named Plaintiff and the proposed Classes and Subclasses

reasonable costs and attorney's fees under §13-408 of the Commercial Law Article.

M.      The Court award Named Plaintiff and the proposed Classes and Subclasses such

other and further relief as the Court deems just and proper.

QUINN, GORDON & WOLF, CHTD.

By:     /s/ Martin E. Wolf
        Martin E. Wolf (Bar No. 09425)
        mwolf@quinnlaw.com
        Benjamin H. Carney (Bar No. 27984)
        bcarney@quinnlaw.com
        QUINN, GORDON & WOLF, CHTD.
        102 W. Pennsylvania Avenue, Suite 402
        Towson, Maryland 21204
        (410) 825-2300

        Mark H. Steinbach (Bar No. 26538)
        Steinbach@otrons.com
        O'TOOLE, ROTHWELL, NASSAU &
        STEINBACH
        1350 Connecticut Avenue, N.W., Suite 200
        Washington, D.C. 20036

(202) 775-1550

ATTORNEYS FOR PLAINTIFF

## **JURY DEMAND**

Plaintiff demands trial by jury.

/s/_____
Martin E. Wolf