**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**(Northern Division)**

SHERRY L. BERRY, et al.                      *

        Plaintiffs,                        *

   v.                                           *

                                Case No. 1:09-cv-00426-AMD

COOK MOTORCARS, LTD.                        *

                                   *

        Defendant.                         *

*   *   *   *   *   *   *   *   *   *   *   *   *

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

Plaintiff, Sherry L. Berry, opposes the Motion to Dismiss Complaint ("Motion to Dismiss") filed by Defendant Cook Motorcars, Ltd. ("Cook Motorcars").

**I.   INTRODUCTION**

This case challenges systematic misrepresentations made by Cook Motorcars to its customers and to the lenders to whom it brokered car loans, all in the name of added but illegally obtained profit. Specifically, Cook Motorcars consistently misrepresented the amount of "negative equity"[1] in the trade-in vehicles of Named Plaintiff and the other members of the putative class in order to push through loans that otherwise would not have been approved. Cook Motorcars' scheme was effected by secretly inflating the "cash price" of the vehicle it sold by the amount of negative equity in the trade-in, and stating on transaction documents that no money was owed on the trade-in.  This practice damaged consumers by increasing the taxes paid on the transaction, and by putting them into credit arrangements for which they were not qualified; it damaged financing companies when Cook Motorcars brokered numerous under-

---

[1] "Negative equity," as used herein, means the difference between the amount credited by Cook to the customer for a trade-in vehicle, and the amount owed on the account secured by that vehicle.

secured loans which would not have been approved had Cook Motorcars honestly reported the facts of the transactions to lending entities.

Cook Motorcars' dishonest loan brokering practices are precisely the kind of activities that put credit markets at risk - and Congress provided a means to stop such misrepresentations through the federal Credit Repair Organizations Act ("CROA"), 15 U.S.C. §§1679a, *et seq*. The plain language of the CROA prohibits "***any person***" from making a misrepresentation to a creditor, or counseling a consumer from making such a misrepresentation, in order to obtain an extension of credit. [2] Cook Motorcars' false statements about the negative equity in financed transactions are such false statements – and resulted not only in the deception of its customers, but in numerous under-secured auto loans which undoubtedly were bundled and sold on the securities markets.

While Cook Motorcars might not be the archetypal credit repair organization,[3] or "CRO," this Court has recognized that a person need not be a CRO to be liable under the CROA. *See Polacsek v. Debticated Consumer Counseling, Inc*., 413 F.Supp.2d 539 (D.Md. 2005). Indeed, the CROA covers misrepresentations in applications for credit by "any person," including loan brokers such as Cook Motorcars, where no credit repair organization was involved at all. *See* 15

---

[2] As discussed below, the cases cited by Cook Motorcars to support a contrary view are largely unreported, and violate general canons of statutory construction to reach their conclusion - those few cases Cook Motorcars cites which are reported are inapposite.

[3] Plaintiff does not rely on Cook Motorcars' status as a CRO to state a claim against it under the CROA. Nevertheless, it is notable that Cook advertises that "we can help" with "bad credit," and that it can help its customers "re-establish" their credit. *See* Exhibits 1 and 2, Cook Motorcars Website pages. "A court may take judicial notice of the contents of an Internet website." *Energy Automation Systems, Inc. v. Saxton*, 2009 WL 790109 at *2 n.1 (M.D.Tenn. March 25, 2009), *citing City of Monroe Emples. Ret. Sys. v. Bridgestone Corp*., 387 F.3d 468, 472, n. 1 (6th Cir.2004); *see also Patsy's Italian Restaurant, Inc. v. Banas*, 575 F.Supp.2d 427, 443 n.18 (E.D.N.Y. 2008) ("It is generally proper to take judicial notice of articles and Web sites published on the Internet"), *citing Wang v. Pataki*, 396 F.Supp.2d 446, 458 n. 2 (S.D.N.Y.2005) (*citing Hotel Employees & Rest. Employees Union, Local 100 v. N.Y. Dep't of Parks & Recreation*, 311 F.3d 534, 549 (2d Cir.2002)); *Ligon v. Doherty*, 208 F.Supp.2d 384, 386 (E.D.N.Y.2002); *see also* Fed.R.Evid. 201(b)(2), (f).

U.S.C. §1679b(a)(1)&(2); *see also Ware v. Indymac Bank, FSB*, 534 F.Supp.2d 835 (N.D. Ill. 2008); *Martinez v. Freedom Mortgage Team, Inc*., 527 F.Supp.2d 827 (N.D. Ill. 2007); *Pena v. Freedom Mortgage Team*, 2007 WL 3223394 (N.D. Ill. Oct. 24, 2007).

Nevertheless, Cook Motorcars' main argument for dismissing this case is that it is not a CRO, and that its false statements to customers and lenders are excepted from the coverage of the CROA through some unwritten part of the statute. Cook Motorcars' argument, if accepted, would eviscerate an important tool to deter and remedy misrepresentations in the brokering of credit. This Court's opinion in *Polacsek*, however, and the decisions of other courts around the country, demonstrate that the CROA means what it says. Cook Motorcars' proposed reading of the statute is fundamentally flawed.

Cook Motorcars also argues that "the counts brought under Maryland law otherwise fail to state actionable claims," (Motion to Dismiss at 2), but it seems to have forgotten about some of those claims. It does not argue that Plaintiff's claims under the Credit Grantor Closed End Credit Provisions ("CLEC") (Count V) should fail. Plaintiff's other claims - for breach of contract, violations of Maryland's Consumer Protection Act ("CPA"), and money had and received - all appropriately state causes of action, as discussed more fully below, and should not be dismissed.

## II. STANDARD OF REVIEW

When ruling on a motion to dismiss, the court must "accept the well-pled allegations of the complaint as true," and "construe the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff." *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997).

Following the Supreme Court's ruling in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1965 (2007), "[f]actual allegations must be enough to raise a right to relief

above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." As long as a claim has been stated, "it may be supported by showing any set of facts consistent with the allegations in the complaint." *Id*. at 1969 (*quoted in Goodman v. Praxair*, 494 F.3d 458, 466 (4th Cir. 2007)).

### III. PLEADED FACTS

Plaintiff's Complaint details a scheme by Cook Motorcars involving material misrepresentations in order to obtain credit for its otherwise unqualified consumers, and straightforward theft in the name of the state. It describes Cook Motorcars' systematic practice of including hundreds or thousands of dollars in "undisclosed charges" in its contracts for the sale of new vehicles. Compl. at ¶¶11-29. Despite the fact that the law requires car dealers to accurately state the "base price" or Manufacturer's Suggested Retail Price ("MSRP") in its contracts for new vehicle sales, Cook Motorcars' standard practice has been to omit this required statement. *Id*. at ¶13-14. It does this to avoid disclosing the additional charges it surreptitiously imposes on its customers - charges which often reach into the thousands of dollars, but add no value for the consumer. *Id*. at ¶14-17.

For example, in the transactions of Named Plaintiff and proposed class members, Cook Motorcars inflated the price of its customers' new vehicles by thousands of dollars in order to conceal from eventual creditors the negative equity in their trade-in vehicles. *Id*. at ¶19. Instead of stating the true price of a new vehicle, Cook Motorcars added to that price the difference between what it was actually crediting its customer for the trade in, and the amount owed on the trade in. *Id*. Then, to complete the deception, Cook Motorcars stated in the transaction documents that its customer's trade-in vehicle covered the full amount owed on the loan. *Id*. Cook Motorcars' misrepresentations about negative equity were directly intended to

misrepresent the credit history of its customers in order to qualify them for financing they would

not otherwise get. *Id*. at ¶59. Doing so concealed adverse credit information from potential

creditors, and misrepresented the credit worthiness, credit standing, and credit capacity of

Plaintiff and the other putative class members. *Id*. at ¶63.

Cook Motorcars' treatment of negative equity also resulted in significantly increased

excise taxes for its customers, since negative equity is not normally taxed, but the negative

equity which is added to the purchase price of their new car is taxed. *Id*. at ¶¶21-25.  Cook

Motorcars also overcharges its customers in the name of the government, skimming off the

overcharges for its own profit.  *Id*. at ¶¶30-36.  Instead of charging for the amounts actually

charged by the government for title, tags, and registration, Cook Motorcars inflates the charges,

remitting only the required amount to the government and "deliberately and knowingly" keeping

the rest. *Id*. at ¶36.  Cook Motorcars also adds to the purchase price of its vehicles charges for

products and services which are not performed, or of no value.  *Id*. at ¶18.[4]

All of these facets of Cook Motorcars' illegal practices presented themselves in

Plaintiff's transactions.  Ms. Berry first purchased a Mazda RX-8 from Cook Motorcars.  She

paid $196 in government charges – but Cook Motorcars only paid the government $171.  It kept

the rest.  *Id*. at ¶38-41; *see also* Compl. Exhs. A&B.  Then, when the RX-8 ceased running a few

months later, Ms. Berry took it back, and Cook Motorcars sold her a Mazda M3-S.  Cook

Motorcars charged Ms. Berry $200 in government charges in this transaction, but paid the

government only $53.  *Id*. at 43-45;  *see also* Compl. Exhs. C &D.  Cook kept the extra $147. *Id*.

Cook Motorcars not only misrepresented the amount of government charges in Plaintiff's

transaction for the M3-S, but also inflated the purchase price of her vehicle and misrepresented

---

[4] There is no mention of these allegations of governmental fee overcharges, or overcharges for goods and services, at any point in the Motion to Dismiss.

the trade in allowance it was giving her on the vehicle it previously sold her that stopped running. *Id*. at ¶47. It claimed on the contract that it was crediting her with a trade-in allowance equal to the entire amount owed on the loan secured by the trade-in, but, in fact, it credited her with much less and inflated the cash price of her purchase to cover the difference. *Id*.; *see also* Compl. Exhs. A& C. Cook Motorcars did so to deceive Ms. Berry about the true allowance being given for her vehicle – but also to deceive the creditor financing Ms. Berry's purchase. *Id*. at ¶64. As a result, the creditor was unknowingly re-financing a large amount of negative equity as part of the vehicle loan, rendering the loan under-secured. Cook Motorcars manipulated and misrepresented the information in its transactions without regard either to its customers, or to the financial well-being of the creditors to whom it brokered loans. Compl. ¶66.

## IV. DISCUSSION

### A. The Plain Language of the CROA Prohibits "Any Person" – Including Cook Motorcars - From Lying to Obtain Credit for a Consumer.

Cook Motorcars, just like everyone else, is prohibited under the CROA from lying to get a consumer an extension of credit, 15 U.S.C. §1679b(a)(1) & (2). The statutory text of the CROA is in stark contrast to Cook Motorcars' argument about what it thinks the statute ***should*** say. Cook Motorcars argues that it is not a CRO, and that the CROA does not apply to anyone or anything other than a CRO. Cook Motorcars is just wrong. The statutory provisions that Cook Motorcars violated (§1679b(a)(1) & (2)) expressly apply to "any person," and do not require (or even mention) the involvement of CROs. These provisions are, notably, in contrast to other parts of the statute which only apply to CROs (*see* §1679b(b)) or which only apply to transactions involving CROs (*see* §1679b(a)(3) & (4)).

Cook Motorcars claims that the CRO requirement specifically contained in those other sections of the statute should be "presumed" where it is not stated. Def. Mem. at 11. However,

that argument runs counter to basic statutory construction - the very fact that some parts of the statute specifically require the involvement of CROs is compelling evidence that CRO involvement is not required where it is not mentioned.  Moreover, the argument that the CROA only applies to CROs has been rejected by this Court, and numerous others.  Cook Motorcars' attempt here to contradict the text of the statute and the prior rulings of this Court should fail.

     i.  *The Plain Language of the CROA Section 1679b(a)(1)&(2) Applies to All "Persons," and Does Not Require the Involvement of a CRO.*

The plain text of the CROA includes prohibitions which, on their face, apply to all "persons."  Comparing the plain text of the statute to Plaintiff's allegations shows that she adequately pleaded claims for violations of the CROA.  The CROA at section 1679b(a) states:

(a) In general

***No person may***—

(1) ***make any statement***, or counsel or advise any consumer to make any statement, ***which is untrue or misleading*** (or which, upon the exercise of reasonable care, should be known by the credit repair organization, officer, employee, agent, or other person to be untrue or misleading) ***with respect to any consumer's credit worthiness, credit standing, or credit capacity to***—

    (A) any consumer reporting agency (as defined in section 1681a(f) of this title); or
    (B) ***any person***—

        (i)    ***who has extended credit to the consumer; or***
        (ii)    ***to whom the consumer has applied or is applying for an extension of credit***;

(2) ***make any statement***, or counsel or advise any consumer to make any statement, the intended effect of which is to alter the consumer's identification ***to prevent the display of the consumer's credit record, history, or rating for the purpose of concealing adverse information that is accurate and not obsolete*** to—

    (A) any consumer reporting agency;
    (B) ***any person***—

> (i)    *who has extended credit to the consumer*; or
> (ii)   *to whom the consumer has applied or is applying for an extension of credit*.

15 U.S.C. §1679b(a)[emphasis added].

Here, Plaintiff pled facts showing that Cook Motorcars violated both 1679b(a)(1), and

1679b(a)(2).  Specifically, Plaintiff alleged that

> in violation of these provisions, Cook systematically prepared documents which made false and misleading statements to the entities from whom financing was obtained or sought for the purchase of motor vehicles sold by Cook.  Cook made these false and misleading statements because it believed that accurate disclosure of negative equity in Customer trade-ins would lead its Customer and the potential lender to decline to go through with the deal.

Complaint ¶59.  Plaintiff alleged that, in violation of the CROA, Cook Motorcars "concealed the

negative equity" in trade-in vehicles, that it "misstated the value of the trade in vehicles …

intending Customers and lenders to believe the trade-in was worth more than its true value," that

it "represented on its form contracts…that the dealership was providing Customers with a trade-

in value exactly equal to the remaining loan" on the trade-in.  Complaint ¶62.  Plaintiff alleged

that "[i]t was Cook's systematic, unvarying practice to offer its Customers' credit contracts to

banks, finance companies and other lending institutions on documents which concealed this

adverse information and which misstated and misrepresented the amount of equity the Customer

had in their trade."  Complaint ¶63.  Accordingly, Cook Motorcars made "untrue and/or

misleading statements with respect to … credit worthiness, credit standing, and/or credit capacity

… to … the banks, finance companies or other lending institutions to whom the consumers has

applied for (or were applying for) credit " in violation of the CROA.  Complaint ¶64.[5]  The

allegations of the Complaint thus set forth a viable claim under the plain text of the CROA.

---

[5] Cook Motorcars argues that Plaintiff did not allege that Cook took a fee in connection with its false statements to potential creditors.  First, the CROA does not require the taking of a fee for liability to

ii. *Using the Familiar Canons of Statutory Construction Shows that §1679b(a)(1)&(2) Do Not Require Allegations of the Involvement of a CRO.*

Cook Motorcars does not dispute that the activities alleged by Plaintiff would violate the CROA if the statute is read as written. Its only argument is that the statute does not mean what it says. It claims that this Court must look behind the plain text of this remedial statute, enacted to protect consumers, in order to find an unwritten exception from liability to consumers for the variety of fraud perpetrated by Cook Motorcars. This argument goes against not only the text of the statute, but against the familiar canons of statutory construction.

Statutory interpretation starts with the text of the statute – and when the statute is clear, it ends there.

> Our analysis begins with the plain words of the statute. If the terms of this statute are unambiguous on their face, or in light of ordinary principles of statutory interpretation, then "judicial inquiry is complete," Rubin v. United States, 449 U.S. 424, 430, 101 S.Ct. 698, 701, 66 L.Ed.2d 633 (1981); there is no need to consult legislative history nor to look to the "rule of lenity" that is applied in construing ambiguous criminal statutes.

*United States v. James*, 834 F.2d 92 (4th Cir. 1987). "This Court, in conducting statutory interpretation, cannot be motivated by factors outside the unambiguous text of a statute." *A.T.*

*Massey Coal Co., Inc. v. Barnhart*, 381 F.Supp.2d 469, 482 (D.Md. 2005). Here, the

---

attach under the sections at issue, and Cook's failure to point to any provision of the statute which requires the taking of a fee is telling. Second, the argument is factually false. Plaintiff alleged that Cook made money from brokering these loans, in the form of "a kickback of the interest rate on the loan it obtains for the consumer." Complaint ¶20. Moreover, as has been noted by the FTC,

> courts have ruled that the CROA does not require that a consumer's payment to a credit repair organization be itemized so that part of it is specifically designated for credit repair services. *Bigalke v. Creditrust Corp*., 162 F. Supp. 2d 996, 998 (N.D. Ill. 2001); Parker v. 1-800 BAR NONE, 2002 WL 215530 *5 (N.D. Ill.). To require such a showing would only reward Defendants for their deceptive practices in touting the benefits of their services while hiding that they keep consumers' first payments as a fee.

Intervener Federal Trade Commission's Reply In Support Of Its Motion For Reconsideration Of Order Preliminarily Approving Stipulation Of Settlement And Release And Class Notice in *Cass v. Ameridebt, Inc*., No. 01 CH 20350 at 21 (Cir. Ct. Cook Cty. Ill. July 15, 2004), available online April 21, 2009 at http://www.ftc.gov/bcp/workshops/classaction/cassvameridebt_reply.pdf.

unambiguous text of the CROA, §1679b(a)(1) & (2), prohibits "any person" from taking the prohibited actions. As discussed above, Plaintiff alleged that Cook Motorcars undertook those prohibited actions. Indeed, Cook Motorcars does not argue that Plaintiff did not allege the prohibited actions occurred - it just argues that it is subject to an unwritten exception to the statute. That argument is inconsistent with the plain language of the statute, and is in direct conflict with *James* and *A.T. Massey*, among others.

In addition, statutory language must be construed so that different terms in the same statute are not treated as having the same meaning.

> In construing statutory language, it is presumed that the words of a statute were included for "a purpose." The "use of different language creates the inference that Congress meant different things." ***Treating different statutory terms in the same statute similarly would "violate the 'well known maxim of statutory construction that all words and provisions of statutes are intended to have meaning and are to be given effect, and words of a statute are not to be construed as surplusage*.*'* "

*Bryant v. Better Business Bureau of Greater Maryland, Inc*., 923 F.Supp. 720 (D.Md. 1996)[citations omitted, emphasis added].

This rule compels finding that §1679b(a)(1) & (2) do not require the involvement of a CRO to show a violation. The CROA explicitly requires the involvement of a CRO for certain activities prohibited under the act. *See*, *e.g*., §1679b(b),[6] §1679b(a)(3)[7], §1679b(a)(4)[8].

---

[6] Section 1679b(b) states:
> ***No credit repair organization may*** charge or receive any money or other valuable consideration for the performance of any service ***which the credit repair organization*** has agreed to perform for any consumer before such service is fully performed.

[emphasis added].

[7] Section 1679b(a)(3) states:
> No person may--… make or use any untrue or misleading representation of the services ***of the credit repair organization***.

[emphasis added].

[8] Section 1679b(a)(4) states:

Congress, however, conspicuously left out any mention of a CRO under §1679b(a)(1) & (2).

Cook Motorcars' argument – that the court should read a CRO requirement in to §1679b(a)(1) & (2) – would require construing as surplusage the ***specific*** CRO requirements of §1679b(b), §1679b(a)(3), and §1679b(a)(4). The rule enunciated in *Bryant* prohibits such a reading.

> In addition, the CROA should be read in favor of consumers, not against them.

> In enacting the Consumer Credit Protection Act, of which CROA is a part, Congress intended for courts to broadly construe its provisions in accordance with its remedial purpose. *See Brothers v. First Leasing*, 724 F.2d 789, 793 (9th Cir.1984). Moreover, courts should construe consumer protection statutes "liberally" in favor of consumers. *Bizier v. Globe Fin. Serv. Inc*., 654 F.2d 1, 3 (1st Cir.1981).

*Cortese v. Edge Solutions, Inc*., 2007 WL 2782750 at *4 (E.D.N.Y. September 24, 2007). A liberal construction is not required to find Cook Motorcars covered by the plain language of §1679b(a)(1) & (2), which covers "any person," and does not grant car dealers a special exception to lie to creditors about a consumer's credit worthiness. Only creatively reading the statute ***against*** consumers could provide the result Cook Motorcars desires, and that would conflict with the remedial purpose of the CROA.

> iii. *The Case Law From This Court and Others Concludes That the CROA Does Not Only Regulate CROs*.

Numerous opinions have found that no CRO need be involved for a consumer to state a claim for violation of the CROA. The broad language of the CROA must be given broad effect.

Indeed, this Court has already rejected the argument that the CROA should be read only to cover CROs. In *Polacsek v. Debticated Consumer Counseling, Inc*., 413 F.Supp.2d 539 (D.Md. 2005), the defendant credit counseling agencies argued that the CROA "was only

---

> No person may--… engage, directly or indirectly, in any act, practice, or course of business that constitutes or results in the commission of, or an attempt to commit, a fraud or deception on any person in connection with the offer or sale of the services ***of the credit repair organization***.

[emphasis added].

intended to regulate companies that deal with credit bureaus and which promise to repair credit

histories," and that thus the CROA did not apply to their businesses. *Id*. at 545-546.  Judge

Messitte analogized the broad language of the CROA to the broad language of the Racketeer

Influenced and Corrupt Organizations Act ("RICO") – another statute which applies to entities

beyond the statute's primary target, the Mafia – and looked to U.S. Supreme Court precedent to

determine that the CROA should be read as written:

> It was frequently contended that the Racketeer Influenced and Corrupt
> Organizations (RICO) Act's private action treble-damages provision applied only
> to defendants who had been convicted of criminal charges and only when a
> "racketeering injury" had occurred.  The Supreme Court, however, put this notion
> to rest in *Sedima v. Imrex Co.*:
>
> > Underlying the Court of Appeals' holding was its distress at the
> > extraordinary, if not outrageous," uses to which civil RICO has
> > been put.  Instead of being used against mobsters and organized
> > criminals, it has become a tool for everyday fraud cases brought
> > against "respected and legitimate 'enterprises'" Yet Congress
> > wanted to reach both "legitimate" and "illegitimate" enterprises.
> > The former enjoy neither an inherent incapacity for criminal
> > activity nor immunity from its consequences.  The fact that
> > §1964(c) is used against respected businesses allegedly engaged in
> > a pattern of specifically identified criminal conduct is hardly a
> > sufficient reason for assuming that the provision is being
> > misconstrued.  Nor does it reveal the "ambiguity" discovered by
> > the court below.  "[T]he fact that RICO has been applied in
> > situations not expressly anticipated by Congress does not
> > demonstrate ambiguity.  It demonstrates breadth."
> > It is true that private civil actions under the statute are being
> > brought almost solely against such defendants, rather than against
> > the archetypal, intimidating mobster.  Yet this defect – if defect it
> > is – is inherent in the statute as written, and its correction must lie
> > with Congress.  It is not for the judiciary to eliminate the private
> > action in situations where Congress has provided it simply because
> > plaintiffs are not taking advantage of it in its more difficult
> > applications."
> >                              *        *        *
> > "RICO may be a poorly drafted statute, but rewriting it is a job for
> > Congress, if it is so inclined, and not for this Court.  There is no
> > more room in RICO's "self-consciously expansive language and
> > overall approach" for the imposition of an organized crime

> limitation than for the "amorphous 'racketeering injury' requirement" we rejected in *Sedima*. We thus decline the invitation to invent a rule that RICO's pattern of racketeering concept requires an allegation and proof of an organized crime nexus.
>
> ***The same may be said of CROA. … If the language of the Act reaches too far, it is for Congress – not the Court – to take corrective action***.

*Id*., *quoting Sedima v. Imrex Co*., 473 U.S. 479, 499-500 (1985), *H.J. Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229, 249 (1989). This Court's determination that the language of the CROA cannot be limited to its supposed primary target, but must be applied as it is written, is dispositive of Cook Motorcars' argument.

This District is not the only jurisdiction to apply the CROA as written – numerous other decisions have found that the CROA means what it says and that the provisions relied on in this case by Plaintiff cannot be limited to apply only to credit repair organizations. *See Martinez v. Freedom Mortgage Team, Inc*., 527 F.Supp.2d 827, 840 (N.D. Ill. 2007); *Pena v. Freedom Mortgage Team*, 2007 WL 3223394 at \*6 (N.D. Ill. Oct. 24, 2007); *Ware v. Indymac Bank, FSB*, 534 F.Supp.2d 835, 845-846 (N.D. Ill. 2008); *Zimmerman v. Cambridge Credit Counseling Corp*., 529 F.Supp.2d 254, 276 n.20 (D. Mass. 2008); *Stith v. Thorne*, 2006 WL 5444366 at \*9-10 (E.D. Va. Oct. 30, 2006); *Costa v. Mauro Chevrolet, Inc*., 390 F.Supp.2d 720, 727 (N.D.Ill. 2005); *Vance v. Nat'l Benefit Ass'n*, 1999 WL 731764, at \*3-4 (N.D.Ill. Aug.30, 1999); *Bigalke v. Creditrust Corp*., 162 F.Supp.2d 996, 999 (N.D.Ill. 2001).

For example, in *Martinez*, the plaintiff asserted that the defendant, a mortgage broker, violated the CROA, 15 U.S.C. §1679b(a)(1)(B)(ii) – one of the same provisions at issue here - "by overstating his income and assets on the loan application submitted" to the mortgage lender. 527 F.Supp.2d at 840. The transaction involved only a mortgage broker and a lender – the

services of a CRO were not involved. *See id*. at 832-833.[9]    The mortgage broker there made the

same argument as Cook Motorcars, but the court disagreed:

> Freedom [the mortgage broker] argues that it is not a 'credit repair organization'
> and thus cannot be liable under the statute.  Such a position runs afoul of the plain
> language of 15 U.S.C. §1679b(a), which prohibits any 'person' from engaging in
> the prohibited activity.  **By using "person" in that subsection and "credit repair
> organization" in other subsections** (such as the prohibition set out in 15 U.S.C.
> §1679b(b)), **Congress clearly expressed the intention that no entity could
> engage in the proscribed conduct whether or not that entity qualified as a credit
> repair organization**.

*Id*. at 840 [emphasis added].

The court reached the same result in *Pena*, another case where no CRO was involved.

There, the mortgage broker – again, like Cook Motorcars - argued that it was not a CRO and that

a CROA claim against it should be dismissed.  2007 WL 3223394 at *6. The court rejected the

argument in short shrift:

> The section of the statute that plaintiffs say [the mortgage broker] violated,
> however, applies to all people, not just creditors or credit repair organizations.  15
> U.S.C. §1679b(a)(stating that "*[n]o person* may  … make any statement, or
> counsel or advise any consumer to make any statement, which is untrue or
> misleading … with respect to any consumer's credit worthiness, credit standing,
> or credit capacity to … any person … to whom the consumer has applied or is
> applying for an extension of credit"

*Id*. [emphasis in *Pena*].  The court then denied the motion to dismiss.  Here, just as in *Pena*, the

defendant loan broker (a vehicle loan broker instead of a mortgage broker, but a broker just the

same) allegedly made false statements in applying for credit for the plaintiff.  Just as the motion

to dismiss was denied in *Pena*, it should be denied here.

In *Ware*, the defendant mortgage broker also unsuccessfully argued that a CROA claim

against it under §1679b should be dismissed since it was not alleged to be a CRO. 534 F.Supp.2d

---

[9] Cook Motorcars' assertion that "[n]o jurisdiction in the country … has elected to so incorrectly
construe the meaning of persons within §1679b(a) to extend liability to any and all 'persons' without any
allegations of involvement in credit repair services" is thus a hyperbolic fabrication. Def. Mem. at 14.
*See also Ware*, *Pena*.

at 845-846.   Once again, the case did not concern the activities of any CRO.  Nevertheless, the

court did not write in an exception to the statute which was not provided by Congress.

> [The mortgage broker] argues that it is not a credit repair organization, and
> therefore not subject to the CROA.  The plain language of the CROA, however,
> simply prohibits **any person** from engaging in the proscribed activities.

*Id.* [emphasis in original].

The District of Massachusetts also rejected confining the CROA to apply only to CROs

in *Zimmerman*, 529 F.Supp.2d at 276 n.20.  There, the court found that "it would betray the

statute's intent to confine CROA's reach to only those practices that Congress explicitly

identified in enacting it."  The court noted that the Supreme Court has cautioned "against

narrowing 'a prohibition expressed by the unqualified use of a term without any conventionally

narrow sense … so that it covers only instances of the particular practice that induced Congress

to enact the general prohibition.'"  *Id.*

Another court in this Circuit, in *Stith*, likewise recognized that the CROA cannot be read

to cover only CROs, since some parts of the statute specifically require the involvement of a

CRO, and other parts do not.  2006 WL 5444366 at *9-10.  The court noted that even if a

defendant "is not a credit repair organization, however, it still can be liable for violations of 15

U.S.C. § 1679b."  *Id.*, *citing Costa*, 390 F.Supp.2d at 727 (N.D.Ill.2005).

> The CROA states that:
> *[n]o person* may engage, directly or indirectly, in any act, practice, or
> course of business that constitutes or results in the commission of, or an attempt
> to commit, a fraud or deception on any person in connection with the offer or sale
> of the services of the credit repair organization.
> 15 U.S.C. § 1679b(a)(4) (emphasis added). Because Congress used the term
> "person" instead of "credit repair organization," as it does in other parts of the
> statute, Congress intended "that the two terms have different meanings."

*Id.*[emphasis in *Stith*], *quoting Costa*.

In *Costa*, the court rejected the argument of defendant car dealer that it could not be subject to the CROA since it was not a CRO, relying on the lack of a specific CRO requirement under §1679b. 390 F.Supp.2d at 727-728.

> Section 1679b provides that it is a violation of the CROA for any "person" to "make any statement, or counsel or advise any consumer to make any statement, the intended effect of which is to alter the consumer's identification to prevent the display of the consumer's credit record, history, or rating for the purpose of concealing adverse information that is accurate and not obsolete...." 15 U.S.C. § 1679b(a)(2)(B)(ii). Normally, when Congress uses different terms in this manner in the same statute, Congress's choice to employ different terms (at least in the absence of contrary evidence) means that the two terms have different meanings. *See generally Treadway v. Gateway Chevrolet Oldsmobile, Inc*., 362 F.3d 971, 975 (7th Cir.2004) (analysis of CROA questions "must begin with the language of the statute itself.") (citation omitted). The term "person" in the law certainly encompasses a broader universe of individuals and entities than the term "credit repair organization" employed and defined in Section 1679a. *Accord*, *e.g*., *Bigalke[v. Creditrust Corp*., 162 F.Supp.2d 996, 999 (N.D.Ill. 2001)] (holding that even if defendant is not a credit repair organization within the meaning of section 1679a(3)(A), section 1679b applies to the defendant). Defendants point to nothing in the text or legislative history of the CROA to suggest that "person" should not be afforded its ordinary and broader meaning than "credit repair organization." Accordingly, the Court finds that, to sustain a claim under the plain language of section 1679b of the CROA, Plaintiffs need not allege that Mauro Chevrolet is a "credit repair organization."

*Id*.; *see also Vance v. Nat'l Benefit Ass'n*, 1999 WL 731764, at *3-4 (N.D.Ill. Aug.30, 1999)(similarly finding that not only CROs are liable under the CROA); *Bigalke v. Creditrust Corp*., 162 F.Supp.2d 996, 999 (N.D.Ill. 2001)(same).

Against this compelling backdrop of case law[10] enforcing the CROA as written, Cook

Motorcars relies largely on unreported cases purportedly discerning the "intent" of Congress to

find that the CROA – a remedial consumer protection statute - must be read against the interest

of consumers and re-written by the courts to include unwritten exceptions.  *See* Def. Mem. at 8-

10, *citing Nixon v. Alan Vester Auto Group, Inc*., 2008 U.S. Dist. LEXIS 79294 (M.D.N.C. Oct.

8, 2008); *Sannes v. Jeff Wyler Chevrolet, Inc*., 1999 U.S. Dist. LEXIS 21748 at *10 (S.D. Ohio

March 31, 1999); *Wojcik v. Courtesy Auto Sales, Inc*., 2002 U.S. Dist. LEXIS 22731 at *22

(D.Neb. Nov. 25, 2002).[11]  These cases all reach their conclusion by taking what they perceived

---

[10] Plaintiff's reading of the CROA is supported not only by the statutory text and case law, but also by persuasive secondary authority, which also finds that the provisions of the CROA which Cook is alleged to have violated cover more than just CROs.

> A number of CROA's provisions – disclosures, the three day right to cancel, requirements for contracts, and the prohibition on advance payment – apply only to "credit repair organizations" as defined by the statute. … The scope of the Act goes well beyond "credit repair organizations," however.  Many of the most important prohibitions of the Act apply not just to credit repair organizations but to any "person."  Thus, individuals and organizations that do not meet the definition of "credit repair organization" can still be subject to liability if they violate or assist in a violation of these prohibitions.
>
>         \*       \*       \*
>
> Section 1679b(a) of the Act prohibits four deceptive practices in very general terms.  Taken as a group, the prohibitions forbid untrue or misleading statements to consumers about the organization's services, to consumer reporting agencies about the credit standing of a consumer, and to actual or potential creditors of the consumer.  … These prohibitions apply not just to credit repair organizations, but to "any person."  "Person" is clearly a broader term than "credit repair organization," and courts should give effect to the apparent intent of Congress when it chose this broader term to define the scope of these prohibitions.  Since these prohibitions are not confined to entities that meet the definition of "credit repair organization," the consumer need not show that the defendant promised credit repair services or provided them in return for money or other valuable consideration.

National Consumer Law Center, Fair Credit Reporting 449, 458 (6th ed. 2006)[footnotes and citations omitted].

[11] Cook Motorcars cites to *Rannis v. Fair Credit Lawyers, Inc*., 489 F.Supp. 2d 1110, 1118 (C.D. Cal. 2007)(*see* Def. Mem. at 12), but that case had nothing to do with the statutory provisions at issue here.  The court there specifically noted the irrelevance of the defendants' argument against liability under the section Cook Motorcars is alleged to have violated here, stating "Defendant argues that he has not

was the very "corrective action" which was rejected by this Court in *Polacsek*, and rejected by

numerous other courts as discussed above. Such a proposed re-writing of the CROA should be

rejected again.[12]  Cook Motorcars' Motion to Dismiss Plaintiff's CROA claims should be denied.

---

engaged in a practice prohibited by 1679b(a). But Plaintiff does not allege that Defendant has committed a violation of that provision of the CROA." *Id.*  Moreover, that case **rejected** engrafting a new exception to the CROA – in that case, a proposed exception for lawyers, on the basis that "[t]he CROA does not provide for any such exemption." *Id.* at 1117.  *Rannis* is irrelevant, as it deals with a different subsection of the CROA than the present case.  If anything, it supports Plaintiff's argument that unwritten exceptions should not be added to the CROA.

Cook Motorcars also cites *Helms v. Consumerinfo.com, Inc.*, 436 F.Supp.2d 1220, 1234 (N.D. Ala. 2005)(*see* Def. Mem. at 12), but, again, that case dealt with a different part of the statute. Specifically, it dealt only with §1679b(a)**(3) & (4)** – provisions which specifically require the presence of a credit repair organization, as opposed to the subsections at issue here, which have no mention of credit repair organizations.  *Helms* is simply inapposite.

Cook Motorcars also cites to *Henry v. Westchester Foreign Autos, Inc.*, 522 F.Supp.2d 610 (S.D.N.Y. 2007).  This is the only reported case which says what Cook claims – namely, that "[a]lthough [§1679b(a)] uses the word 'person,' it is clear that it was not Congress' intent to have to CROA apply to all persons," but the *Henry* court went against the plain text of the statute to find this purportedly "clear" intent.  With all due respect to the *Henry* court, the plain text of the CROA and the numerous other cases interpreting it to mean what it says indicate that its conclusion was in error.  Moreover, the rejection of the *Henry* court's line of reasoning in *Polacsek*, *supra*, reveals that it is not applicable in this District in any event.

[12] Cook Motorcars' argument that it is exempt from the definition of a CRO under 15 U.S.C.A. § 1679a(3)(B)(ii), as a creditor restructuring debt, (Def. Mem. at 15-16) is irrelevant, untrue, and directly contradicted by its owner's own sworn statement in this case. First, since the provisions of the CROA which Cook is alleged to have violated do not require the involvement of a CRO, whether or not Cook is a CRO is irrelevant.

Moreover, whether or not Cook Motorcars qualified as a "creditor" under the CROA, Ms. Berry owed nothing to it when she traded in her RX-8, and Cook Motorcars' claim here that it was "restructuring" debt owed to it as a "creditor" when lying about her negative equity is an intentional misrepresentation of the facts to this Court. *See* Def. Mem. at 15-16.  The contract for the RX-8 shows that it was immediately assigned from Cook Motorcars to Citifinancial Auto – so, as a matter of fact, Ms. Berry owed Cook Motorcars nothing when she traded it back in. Compl. Exh. A. Cook Motorcars obviously knows this, but makes its argument anyway based on a purposeful misreading of the contract.

Moreover, Cook Motorcars' new claim in this Court that it is now a "creditor" is diametrically opposed to the **sworn statement** of its owner in the Circuit Court for Baltimore County, where this case initially was filed. There, Cook Motorcars claimed that venue was improper in Baltimore County on the basis that Cook Motorcars did not extend credit to Baltimore County residents like Ms. Berry.  *See* Exhibit 3, Affidavit of Robert W. Cook.  Mr. Cook's affidavit specifically states that "**Cook does not provide credit** to any of the purchasers of its vehicles. For those purchasers who did not pay cash, they can finance part of the purchase price through credit companies that **are not associated with Cook**."  *Id.* at ¶4[emphasis added]. Mr. Cook's sworn statement in that document supports Plaintiff's position here that Cook Motorcars is a loan broker – not its new position in this Court, where it contends for the first time that it is a creditor that only restructures debt.  Its new unsupported position, contradicting its owner's

### B. *Plaintiff's State Law Claims are Adequately Pleaded*

Much of Cook Motorcars' discussion of Plaintiff's state law claims (Def. Mem. at 17-22) appears to have been added as an afterthought, since it fails to discuss the vast majority of the allegations supporting those claims, and fails to address Count V of the Complaint, for violation of CLEC, at all.  A brief review of Plaintiff's claims demonstrates that they were adequately pleaded and supported, and should not be dismissed.

### i.   *Plaintiff States a Claim for Breach of Contract*

Plaintiff stated a claim for breach of contract, alleging that Cook Motorcars breached the terms of its contracts with Plaintiff and the proposed class members both by violating the statutes incorporated into those contracts (Compl. ¶¶71-75), and by violating the requirement of good faith incorporated into those contracts (Compl. ¶70). Cook Motorcars wholly fails to address the breach of contract claims predicated on the violation of the incorporated statutes, and bases its "good faith" argument on a misrepresentation of the allegations of the Complaint.

First, it is clear that in Maryland, the terms of a statute can be, and often are, incorporated as terms into a contract.  *See*, *e.g*., *Wells v. Chevy Chase Bank, F.S.B*., 377 Md. 197, 832 A.2d 812 (2003).  In *Wells*, the Court of Appeals reversed dismissal of a breach of contract claim, finding that a reference to a statute in a credit card contract could incorporate the statute as terms, *even where claims under the statute itself were preempted by federal law*.

> Maryland law recognizes that parties may agree to define their rights and obligations by reference to documents or rules external to the contract. *Kirby & McGuire, Inc. v. Board of Education*, 210 Md. 383, 385, 123 A.2d 606, 608 (1956) ("It is clear, too, that by virtue of the incorporation by reference of the contract into the bond and of the other documents into the contract, the bond and all of the documents are to be read and construed together, as if set forth in the bond."); *Ray v. William G. Eurice & Bros., Inc*., 201 Md. 115, 128, 93 A.2d 272,

prior sworn statement, presents an example of a litigant who will say whatever needs to be said in seeking the upper hand.

279 (1952) ( "The lower court seemingly attached significance to the fact that the plans and specifications were not physically fastened to the contract document which was executed, although it specifically and explicitly referred to both. In this situation physical attachment has not the significance so attributed to it. It is settled that where a writing refers to another document that other document, or so much of it as is referred to, is to be interpreted as part of the writing."). *See Hartford Accident & Indem. Co. v. Scarlett Harbor Assocs. Ltd. P'ship*, 346 Md. 122, 128, 695 A.2d 153 (1997).

*Id*. at 229-230.  In addition, the Court of Appeals has long held that the provisions of subsisting laws are incorporated into a contract as terms:

This Court, in various decisions over a long span of years, has cited and applied 'the general rule that subsisting laws enter into and form part of a contract as if expressly referred to or incorporated in its terms.'

*State v. Burning Tree Club, Inc*., 315 Md. 254,269 n.5, 554 A.2d 366, 374 n.5 (1989)[citations omitted].

Here, Plaintiff alleges that the CLEC statute was expressly referenced and incorporated into her contract, and that Md. Trans. §15-311 and the CROA were incorporated as "subsisting law."  Compl. at ¶¶73-74.  Cook Motorcars does not argue that Plaintiff's breach of contract claims predicated on these statutory provisions should be dismissed – it fails to even ***mention*** these statutes, or Plaintiff's allegations that they constituted terms of her contract.

Instead, Cook Motorcars creates its own set of facts to replace those alleged by Plaintiff.  It acknowledges that the obligation of good faith requires good faith in "performing its contractual obligations."  Then, however, it erroneously states that "Ms. Berry does not allege that Cook failed to perform its obligations under the terms of the contracts."  Def. Mem. at 18.  That statement is false - Ms. Berry specifically alleges that Cook Motorcars failed to perform its obligations as spelled out by the statutes incorporated into her contract. Compl. ¶70-75. Once again, Cook Motorcars' argument

only succeeds when ignoring what is actually written.  The Motion to Dismiss Plaintiff's claims for breach of contract should be denied.

   *ii.   Plaintiff States a Claim for Violation of the Consumer Protection Act*

   Cook Motorcars seizes upon two words – "M.S.R.P" and "unconscionable" - from among the many facts alleged in Plaintiff's CPA count, and attempts to spin them into grounds for dismissal of the entire claim.

   First, focusing upon the term "M.S.R.P.," it makes an unsupported, throwaway argument that one aspect of Plaintiff's CPA claim, predicated on Cook Motorcars' failure to provide the required statement of the M.S.R.P., should be dismissed. Def. Mem. at 19.  It states in a wholly unsupported passage:

> MSRP does not establish a ceiling for the final sales price.  That is left to the bargaining of the parties.  The contract of sale between Cook and Ms. Berry stated the higher sales price agreed to by the parties.

Def. Mem. at 19.  In doing so, Cook Motorcars entirely ignores the requirement under Md. Trans. §15-311 that, in Maryland, the "base price" or M.S.R.P. of a new vehicle must be stated in the contract, and ignores the Plaintiff's allegation that Cook Motorcars' failure to do so violated the CPA.  Compl. ¶82.  Plaintiff adequately alleged that §15-311 is a term of Ms. Berry's contract, and alleged that Cook Motorcars violated that term.  Cook Motorcars' willful blindness to the allegations of the Complaint, however, does not make those allegations disappear.

   Cook Motorcars then excerpts the word "unconscionable" from one of the paragraphs of Plaintiff's CPA claim, and launches into an irrelevant three page discussion about how the Maryland Legislature declined to include unconscionability as a *per se* basis for liability under the CPA (Def. Mem. at 19-22) – apparently arguing that any practice which could be construed

as "unconscionable" cannot, therefore, be an unfair or deceptive trade practice in violation of the CPA.  The logical acrobatics required to reach such a conclusion are baffling.

Plaintiff's complaint alleges a litany of facts demonstrating unfair and deceptive practices (which are also unconscionable) and which violate the CPA. The Complaint does not simply allege vague "unconscionability" with nothing more.  *See* Compl. at ¶¶84-87. Cook Motorcars' Memorandum, however, attacks the mere mention of the word "unconscionability" and fails to addresses the actual substantive allegations of the Complaint.    The Motion to Dismiss Plaintiff's CPA claims should be denied.

### iii.  Plaintiff States a Claim for Money Had and Received

Plaintiff adequately stated claims for money had and received. Cook Motorcars dedicates two sentences to argue against these claims, limiting the basis for its motion to dismiss to "the reasons stated above" for dismissal of some of Plaintiff's other claims. Def. Mem. at 22. However, Cook Motorcars failed to even discuss any of the circumstances relating to Plaintiff's money had and received claim at any point in its brief – and it cannot rely on "the reasons stated above" when no such reasons were ever given.

Plaintiff's money had and received claim is based on the collection of undisclosed charges from Plaintiff and the other members of the putative class, and on the collection of excessive fees in the name of the State. Compl. ¶¶93-97.  Cook Motorcars never discusses any of these allegations concerning undisclosed charges or collection of excessive government fees – perhaps hoping they will be overlooked - and thus advances no viable argument to dismiss Plaintiff's claims for money had and received.

*iv.  Plaintiff States a Claim for Violations of CLEC*

As noted above, Count V of the Complaint alleged violations of Maryland's CLEC statute, Md. Comm. L. §§12-1001, *et seq*., and Cook Motorcars does not argue that those claims should be dismissed.  Accordingly, like the rest of the claims of the Complaint, Plaintiff's CLEC claims should remain.

## V.  CONCLUSION

For the reasons set forth above, Plaintiff respectfully requests that this Court deny the Motion to Dismiss.

Dated: April 23, 2009                          Respectfully submitted,

/s/ Benjamin H. Carney
Martin E. Wolf (Bar No. 09425)
Richard S. Gordon (Bar No. 06882)
Benjamin H. Carney (Bar No. 27984)
QUINN, GORDON & WOLF, CHTD.
102 W. Pennsylvania Avenue, Suite 402
Towson, Maryland 21204
(410) 825-2300

Mark H. Steinbach (Bar No. 26538)
O'TOOLE, ROTHWELL, NASSAU &
STEINBACH
1350 Connecticut Avenue, N.W., Suite 200
Washington, D.C. 20036
(202) 775-1550

*Attorneys for Named Plaintiff and the Class*