IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Northern Division)

| | |
|---|---|
| SHERRY L. BERRY, *et al.*,<br><br>*Plaintiffs,*<br><br>v.<br><br>COOK MOTORCARS, LTD.,<br><br>*Defendant.* | Case No. 1:09-cv-00426-AMD |

**PLAINTIFF'S MEMORANDUM IN SUPPORT
OF THE MOTION FOR RECONSIDERATION**

Plaintiff, Sherry L. Berry, submits this memorandum in support of the motion for reconsideration of the Court's Order dated May 19, 2009, granting in part the Motion to Dismiss filed by Defendant Cook Motorcars, Ltd. ("Cook Motorcars").

**BACKGROUND**

Plaintiff alleged in this case that Cook Motorcars systematically violated statutory and common law duties by concealing the negative equity in automobile sale transactions and submitting false applications to creditors. Specifically, Cook Motorcars consistently misrepresented the amount of "negative equity"[1] in the trade-in vehicles of Named Plaintiff and the other members of the putative class in order to push through loans that otherwise would not have been approved. Cook Motorcars' scheme was effected by secretly inflating the "cash price" of the vehicle it sold by the amount of negative equity in the trade-in, and stating on transaction documents that no money was owed on the trade-in. This practice damaged consumers by increasing the taxes paid on the transaction, and by putting them into credit

---

[1] "Negative equity," as used herein, means the difference between the amount credited by Cook to the customer for a trade-in vehicle, and the amount owed on the account secured by that vehicle.

arrangements for which they were not qualified; it damaged financing companies when Cook Motorcars brokered numerous under-secured loans which would not have been approved had Cook Motorcars honestly reported the facts of the transactions to lending entities.

Plaintiff sought to recover damages pursuant to (1) the Credit Repair Organizations Act ("CROA"), 15 U.S.C. §§1679a, *et seq.*, (2) Maryland's Consumer Protection Act, (3) Maryland's Closed End Credit Grantor Act, and (4) the common law quasi-contract cause of action for money had and received. Cook Motorcars' main argument for dismissing the case was that it is not a credit repair organization and, therefore, it is not covered by CROA. Cook also argued that it was not liable under the Maryland statutes and common law claim.

On May 19, 2009, the Court granted Cook Motorcars' motion to dismiss by dismissing the claim under the CROA. The Court also declined to take supplemental jurisdiction over the state law claims and dismissed those claims without prejudice. In making its decision, the Court relied on the statutory construction of two decisions from the Middle District of North Carolina and the Northern District of Florida. The Court also rejected the analysis of some unnamed decisions from the Northern District of Illinois as "outliers." Completely absent from the Court's reasoning, however, are the analyses of the District of Massachusetts, the Eastern District of Virginia, and most surprisingly, this Court in the case, *Polacsek v. Debticated Consumer Counseling, Inc.*, 413 F.Supp.2d 539 (D. Md. 2005)(Judge Messitte).

## ARGUMENT

### 1.

### Standard for Reconsideration

When a motion for reconsideration is filed within 10 days, it is considered pursuant to Rule 59(e), which allows a court, within its discretion, to reconsider a prior order in three circumstances:

>  (1) to accommodate an intervening change in controlling law:
>
>  (2) to account for new evidence not available at trial; or
>
>  (3) to correct a clear error of law or prevent manifest injustice.

*Bogart v. Chapell*, 396 F.3d 548, 555 (4th Cir. 2005); *Pacific Ins. Co. v. Amer. Nat. Fire Ins. Co.*, 148 F.3d 396, 403 (4th Cir. 1998); *Equal Emp. Opportunity Comm'n. v. Lockheed Martin Corp.*, 116 F.3d 110, 112 (4th Cir. 1997); *Hutchinson v. Staton*, 994 F.2d 1076, 1081 (4th Cir. 1993). As the Court noted in Pacific Ins., Rule 59(e) allows a court "to correct its own errors, 'sparing the parties and the appellate courts the burden of unnecessary appellate proceedings.'" 148 F.3d at 403, *quoting*, *Russell v. Delco Remy Div. of Gen. Motors Corp.*, 51 F.3d 746, 749 (7th Cir. 1995).

While it is within a court's discretion to grant a motion under Rule 59(e), a court abuses that discretion when "it fails to take relevant factors intended to guide its discretion into account or when it acts on the basis of 'legal or factual' misapprehensions respecting those factors." *Pacific Ins.*, 148 F.3d at 402. For example, this Court granted a Rule 59(e) motion in *Lockheed Martin* and enforced a subpoena that it had previously refused to enforce on the grounds that the documents sought were irrelevant. In support of the Rule 59(e) motion, the EEOC clarified how the requested documents were relevant to the case. Relying on the third prong of the Rule 59(e) test (to correct a clear error of law or prevent manifest injustice), the Court determined that the subpoena was enforceable and granted the Motion. The Court of Appeals stated:

> The district court did not in any way abuse its discretion in granting the Rule 59(e) motion on that basis. Indeed, if, as the district court further found, our precedent "virtually mandate[s]"enforcement of the subpoena in this case, the district

> court would likely have abused its discretion if it had *failed* to grant the Rule 59(e) motion.

*Lockheed Martin*, 116 F.3d at 112 (emphasis in original).

**2.**

**Overwhelming Precedent and
Principles of Statutory Construction Mandate
That the CROA Applies in this Case**

The CROA applies to Cook Motorcars by virtue of (1) the plain language of the statute itself, (2) settled principles of statutory construction, and (3) the overwhelming precedent of courts that have interpreted the CROA as to the very issue before the Court. In order to reach the conclusion the Court reached in its May 19, 2009 Order, the Court had to ignore the plain language of the statute, violate the settled principles of statutory construction, and disregard the overwhelming precedent by courts that have interpreted the CROA, including this Court. This amounts to either a clear error of law, manifest injustice, or both, justifying the Court's discretion to grant this Motion. Indeed, failure to grant the motion may itself be an abuse of discretion.

Plaintiff set forth in great detail the facts and law on these issues in the Opposition to Cook Motorcars' Motion to Dismiss. She will not repeat those arguments here, but incorporates them by reference as if set forth herein. Plaintiff believes, however, that a brief summary of the arguments will help the Court in considering this Motion.

The plain text of the CROA includes certain provisions that only apply to credit repair organizations ("CRO"), and other provisions that apply to all "persons." Plaintiff alleged violations of the all-persons sections, not the CRO-only sections. The CROA at section 1679b(a) states:

> (a) In general
>
> ***No person may—***

>(1) *make any statement*, or counsel or advise any consumer to make any statement, *which is untrue or misleading* (or which, upon the exercise of reasonable care, should be known by the credit repair organization, officer, employee, agent, or other person to be untrue or misleading) *with respect to any consumer's credit worthiness, credit standing, or credit capacity to*—
>
>>(A) any consumer reporting agency (as defined in section 1681a(f) of this title); or
>>(B) *any person*—
>>
>>>(i)   *who has extended credit to the consumer; or*
>>>(ii)  *to whom the consumer has applied or is applying for an extension of credit*;
>
>(2) *make any statement*, or counsel or advise any consumer to make any statement, the intended effect of which is to alter the consumer's identification *to prevent the display of the consumer's credit record, history, or rating for the purpose of concealing adverse information that is accurate and not obsolete* to—
>
>>(A) any consumer reporting agency;
>>(B) *any person*—
>>
>>>(i)   *who has extended credit to the consumer*; or
>>>(ii)  *to whom the consumer has applied or is applying for an extension of credit*.

15 U.S.C. §1679b(a)(emphasis supplied).

Plaintiff alleged that Cook Motorcars violated both 1679b(a)(1), and 1679b(a)(2). Under the plain language of the CROA, there is no basis to limit the statute to CROs only. The Court's interpretation of the CROA construed this plain language to mean just the opposite. In order to make that analysis, however, the Court would have to breach several well-settled principles of statutory construction.

First, statutory interpretation starts with the text of the statute – and when the statute is clear, it ends there.

> Our analysis begins with the plain words of the statute. If the terms of this statute are unambiguous on their face, or in light of ordinary principles of statutory interpretation, then "judicial inquiry is complete," Rubin v. United States, 449 U.S. 424, 430, 101 S.Ct. 698, 701, 66 L.Ed.2d 633 (1981); there is no need to consult legislative history nor to look to the "rule of lenity" that is applied in construing ambiguous criminal statutes.

*United States v. James*, 834 F.2d 92 (4th Cir. 1987). "This Court, in conducting statutory interpretation, cannot be motivated by factors outside the unambiguous text of a statute." *A.T. Massey Coal Co., Inc. v. Barnhart*, 381 F.Supp.2d 469, 482 (D.Md. 2005).

Second, statutory language must be construed so that different terms in the same statute are not treated as having the same meaning.

> In construing statutory language, it is presumed that the words of a statute were included for "a purpose." The "use of different language creates the inference that Congress meant different things." ***Treating different statutory terms in the same statute similarly would "violate the 'well known maxim of statutory construction that all words and provisions of statutes are intended to have meaning and are to be given effect, and words of a statute are not to be construed as surplusage*.' "**

*Bryant v. Better Business Bureau of Greater Maryland, Inc.*, 923 F.Supp. 720 (D.Md. 1996)(citations omitted, emphasis supplied). This rule compels finding that §1679b(a)(1) & (2) do not require the involvement of a CRO to show a violation. The CROA explicitly requires the involvement of a CRO for certain activities prohibited under the act. *See*, *e.g.*, §1679b(b), §1679b(a)(3), §1679b(a)(4). The Court's interpretation would require construing as surplusage the ***specific*** CRO requirements of §1679b(b), §1679b(a)(3), and §1679b(a)(4).

Third, the CROA should be read in favor of consumers, not against them.

> In enacting the Consumer Credit Protection Act, of which CROA is a part, Congress intended for courts to broadly construe its provisions in accordance with its remedial purpose. *See Brothers v. First Leasing*, 724 F.2d 789, 793 (9th Cir.1984). Moreover, courts should construe consumer protection statutes "liberally" in favor of consumers. *Bizier v. Globe Fin. Serv. Inc.*, 654 F.2d 1, 3 (1st Cir.1981).

*Cortese v. Edge Solutions, Inc.*, 2007 WL 2782750 at *4 (E.D.N.Y. September 24, 2007). Only creatively reading the statute **against** consumers could produce the Court's decision in the May 19, 2009 Order, and that would conflict with the remedial purpose of the CROA.

The overwhelming majority of courts to consider this statutory construction have agreed with Plaintiff's position. Indeed, this Court has already rejected the interpretation that the CROA should be read only to cover CROs. In *Polacsek*, the defendant credit counseling agencies argued that the CROA "was only intended to regulate companies that deal with credit bureaus and which promise to repair credit histories," and that thus the CROA did not apply to their businesses. *Polacsek* at 545-546. Judge Messitte analogized the broad language of the CROA to the broad language of the Racketeer Influenced and Corrupt Organizations Act ("RICO") – another statute which applies to entities beyond the statute's primary target, the Mafia – and looked to U.S. Supreme Court precedent to determine that the CROA should be read as written:

> It was frequently contended that the Racketeer Influenced and Corrupt Organizations (RICO) Act's private action treble-damages provision applied only to defendants who had been convicted of criminal charges and only when a "racketeering injury" had occurred. The Supreme Court, however, put this notion to rest in *Sedima v. Imrex Co.*:
>
>> Underlying the Court of Appeals' holding was its distress at the extraordinary, if not outrageous," uses to which civil RICO has been put. Instead of being used against mobsters and organized criminals, it has become a tool for everyday fraud cases brought against "respected and legitimate 'enterprises'" Yet Congress wanted to reach both "legitimate" and "illegitimate" enterprises. The former enjoy neither an inherent incapacity for criminal activity nor immunity from its consequences. The fact that §1964(c) is used against respected businesses allegedly engaged in a pattern of specifically identified criminal conduct is hardly a sufficient reason for assuming that the provision is being misconstrued. Nor does it reveal the "ambiguity" discovered by the court below. "[T]he fact that RICO has been applied in situations not expressly anticipated by Congress does not demonstrate ambiguity. It demonstrates breadth."

> It is true that private civil actions under the statute are being brought almost solely against such defendants, rather than against the archetypal, intimidating mobster. Yet this defect – if defect it is – is inherent in the statute as written, and its correction must lie with Congress. It is not for the judiciary to eliminate the private action in situations where Congress has provided it simply because plaintiffs are not taking advantage of it in its more difficult applications."
>
> * * *
>
> "RICO may be a poorly drafted statute, but rewriting it is a job for Congress, if it is so inclined, and not for this Court. There is no more room in RICO's "self-consciously expansive language and overall approach" for the imposition of an organized crime limitation than for the "amorphous 'racketeering injury' requirement" we rejected in *Sedima*. We thus decline the invitation to invent a rule that RICO's pattern of racketeering concept requires an allegation and proof of an organized crime nexus.
>
> ***The same may be said of CROA. … If the language of the Act reaches too far, it is for Congress – not the Court – to take corrective action***.

*Id.*, quoting *Sedima v. Imrex Co.*, 473 U.S. 479, 499-500 (1985); *H.J. Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229, 249 (1989).

Many other opinions are consistent with the analysis of this Court in *Polacsek*. While some are from the Northern District of Illinois, many are not. *See Martinez v. Freedom Mortgage Team, Inc.*, 527 F.Supp.2d 827, 840 (N.D. Ill. 2007); *Pena v. Freedom Mortgage Team*, 2007 WL 3223394 at *6 (N.D. Ill. Oct. 24, 2007); *Ware v. Indymac Bank, FSB*, 534 F.Supp.2d 835, 845-846 (N.D. Ill. 2008); *Costa v. Mauro Chevrolet, Inc.*, 390 F.Supp.2d 720, 727 (N.D.Ill. 2005); *Vance v. Nat'l Benefit Ass'n*, 1999 WL 731764, at *3-4 (N.D.Ill. Aug.30, 1999); *Bigalke v. Creditrust Corp.*, 162 F.Supp.2d 996, 999 (N.D.Ill. 2001), but see, *Zimmerman v. Cambridge Credit Counseling Corp.*, 529 F.Supp.2d 254, 276 n.20 (D. Mass. 2008); *Stith v.*

*Thorne*, 2006 WL 5444366 at *9-10 (E.D. Va. Oct. 30, 2006). Each opinion is consistent with one or more of the mandates, to adhere to the plain language, or read the statute consistently.

For example, in *Martinez*, the court held:

> Freedom [the mortgage broker] argues that it is not a 'credit repair organization' and thus cannot be liable under the statute. Such a position runs afoul of the plain language of 15 U.S.C. §1679b(a), which prohibits any 'person' from engaging in the prohibited activity. **By using "person" in that subsection and "credit repair organization" in other subsections** (such as the prohibition set out in 15 U.S.C. §1679b(b)), **Congress clearly expressed the intention that no entity could engage in the proscribed conduct whether or not that entity qualified as a credit repair organization**.

*Id*. at 840 [emphasis added].

In *Pena*, 2007 WL 3223394 at *6:

> The section of the statute that plaintiffs say [the mortgage broker] violated, however, applies to all people, not just creditors or credit repair organizations. 15 U.S.C. §1679b(a)(stating that "*[n]o person* may … make any statement, or counsel or advise any consumer to make any statement, which is untrue or misleading … with respect to any consumer's credit worthiness, credit standing, or credit capacity to … any person … to whom the consumer has applied or is applying for an extension of credit"

In *Ware*, the court refused to write in an exception to the statute which was not provided by Congress (534 F.Supp.2d at 845-846):

> [The mortgage broker] argues that it is not a credit repair organization, and therefore not subject to the CROA. The plain language of the CROA, however, simply prohibits **any person** from engaging in the proscribed activities.

The District of Massachusetts also rejected confining the CROA to apply only to CROs in *Zimmerman*, 529 F.Supp.2d at 276 n.20. There, the court found that "it would betray the statute's intent to confine CROA's reach to only those practices that Congress explicitly identified in enacting it." The court noted that the Supreme Court has cautioned "against narrowing 'a prohibition expressed by the unqualified use of a term without any conventionally

- 9 -

narrow sense … so that it covers only instances of the particular practice that induced Congress to enact the general prohibition.'" *Id*.

In *Stith*, likewise recognized that the CROA cannot be read to cover only CROs, since some parts of the statute specifically require the involvement of a CRO, and other parts do not. (2006 WL 5444366 at *9-10, *quoting Costa*):

> The CROA states that:
>
> > *[n]o person* may engage, directly or indirectly, in any act, practice, or course of business that constitutes or results in the commission of, or an attempt to commit, a fraud or deception on any person in connection with the offer or sale of the services of the credit repair organization.  15 U.S.C. § 1679b(a)(4) (emphasis added). Because Congress used the term "person" instead of "credit repair organization," as it does in other parts of the statute, Congress intended "that the two terms have different meanings."

In *Costa*, the court rejected the argument of defendant car dealer that it could not be subject to the CROA since it was not a CRO, relying on the lack of a specific CRO requirement under §1679b (390 F.Supp.2d at 727-728):

> Section 1679b provides that it is a violation of the CROA for any "person" to "make any statement, or counsel or advise any consumer to make any statement, the intended effect of which is to alter the consumer's identification to prevent the display of the consumer's credit record, history, or rating for the purpose of concealing adverse information that is accurate and not obsolete...." 15 U.S.C. § 1679b(a)(2)(B)(ii). Normally, when Congress uses different terms in this manner in the same statute, Congress's choice to employ different terms (at least in the absence of contrary evidence) means that the two terms have different meanings. *See generally Treadway v. Gateway Chevrolet Oldsmobile, Inc.*, 362 F.3d 971, 975 (7th Cir.2004) (analysis of CROA questions "must begin with the language of the statute itself.") (citation omitted). The term "person" in the law certainly encompasses a broader universe of individuals and entities than the term "credit repair organization" employed and defined in Section 1679a. *Accord*, *e.g.*, *Bigalke[v. Creditrust Corp.*, 162 F.Supp.2d 996, 999 (N.D.Ill. 2001)] (holding that even if defendant is not a credit repair organization within the meaning of section 1679a(3)(A), section 1679b applies to the defendant). Defendants point to nothing in the text or legislative history of the CROA to suggest that "person" should not be afforded its ordinary and broader meaning than "credit repair organization." Accordingly, the Court finds that, to sustain a claim under the plain

language of section 1679b of the CROA, Plaintiffs need not allege that Mauro Chevrolet is a "credit repair organization."

The Court rejected this overwhelming backdrop of precedent, dismissing the cases as "outliers" in favor of two decisions, *Nixon v. Alan Vester Auto Group, Inc.*, 2008 U.S. Dist. LEXIS 79294 (M.D.N.C. Oct. 8, 2008) and *Lopez v. ML #3, LLC*, 607 F.Supp.2d 1310, (N.D. Fla. 2009). In both cases, the courts reached their conclusions by re-drafting provisions of CROA to include language that Congress chose not to include. For example, in Lopez, the Court interpreted the term "person" as used in the operative section of CROA to mean "another person connected to a credit-repair organization" who is not an officer, employee or agent. (607 F.Supp.2d at 1312). In other words, it is OK to lie or counsel a consumer to lie in order to obtain credit as long as you are not a CRO or related to a CRO. This is a remarkable reading of the statute that can only be accepted if one has already determined that the scope of consumer protection afforded by the statute is to be limited. Such a proposed re-writing of the CROA was rejected by this Court in *Polacsek*, and it should be rejected again.

## CONCLUSION

For the reasons set forth above, the Court should grant the Motion for Reconsideration, vacate its Order of May 19, 2009, and allow the case to proceed.

Dated: June 3, 2009

Respectfully submitted,

/s/ Martin E. Wolf
Martin E. Wolf (Bar No. 09425)
Richard S. Gordon (Bar No. 06882)
Benjamin H. Carney (Bar No. 27984)
QUINN, GORDON & WOLF, CHTD.
102 W. Pennsylvania Avenue, Suite 402
Towson, Maryland 21204
(410) 825-2300

Mark H. Steinbach (Bar No. 26538)
O'TOOLE, ROTHWELL, NASSAU & STEINBACH
1350 Connecticut Avenue, N.W., Suite 200
Washington, D.C. 20036
(202) 775-1550

*Attorneys for Named Plaintiff and the Class*